UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    GEORGE S. BEVINS,

              Debtor.

Chapter 13
Case No. 10-12856

Hon. Robert E. Littlefield
U.S. Bankruptcy Judge

## MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Steven J. Baum, P.C. in regard to the allegations set forth in the Debtor's Objection to Claim. GMAC Mortgage, LLC is the servicer for Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18 (the "Secured Creditor"), the holder of a Note and Mortgage on real property commonly known as 178 Route 4N, Northumberland, New York. The Proof of Claim was filed by Steven J. Baum, P.C. on behalf of the Secured Creditor. The Assignment at issue comes from the Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.) the original lender. The assignment paperwork was executed by Elpiniki Bechakas, Esq., who MERS granted the title of Assistant Secretary and Vice President. Ms. Bechakas, an attorney, is an employee of Baum.

Importantly, MERS is not a party to this action, and is not represented by Ms. Bechakas, Baum, or any other attorney in relation to this matter. In the Objection to Claim, dated November 16, 2010, ("Objection"), the Debtor suggests that Baum may have violated New York State attorney ethical rules by simultaneously representing clients -- MERS as assignor and

1

Homecomings as assignee -- with differing interests. The Debtor also mischaracterizes other cases involving the Baum Firm in an attempt to argue that the Baum Firm is committing a fraud on the Court. Because the Debtor's suggestions not only impact on the propriety of the Secured Creditor's Proof of Claim, but also on the Baum Firm's professional conduct, this memorandum is submitted to explain why these suggestions are erroneous. As explained in detail below, because Baum does not represent MERS, there is no conflict of interest, and Baum's representation of the Secured Creditor does not violate any ethical rule proscribing representation of clients with differing interests. *See, e.g.*, New York Rules of Professional Conduct, Rule 7, codified at 22 N.Y.C.R.R. § 1200. Therefore, there were and are no violations of any legal ethical rules here.

## ARGUMENT

### POINT I

### MERS IS NOT A PARTY TO THIS ACTION

As an initial matter, it is important to differentiate between the parties to this action and MERS. The parties are debtor George Bevins (the "Debtor"), and GMAC Mortgage, LLC is the servicer for Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18. MERS is not a party, and has no legal or other interest in this litigation. MERS has not and will not be appearing in this action.

The courts of New York have noted the unique background and role of MERS. As the New York State Court of Appeals explained in *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006), the MERS System was created in 1993 by several large participants in the real estate mortgage industry to track ownership interests in residential

2

mortgages. The Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. Members of the MERS System also include entities such as insurance companies, title companies and banks.

The Court of Appeals explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required.

In the MERS system, which involves an electronic registration system, the transfer of the beneficial interests in the mortgages is facilitated by MERS serving in the capacity as agent for **all** of its members. *See* Bergman, Lender and Servicer Alert (Aug. 2004) (emphasis added). MERS instruments are registered in its central database, which is available to the public, and which tracks all transfers of beneficial ownership and servicing rights. *See id.* MERS becomes the lender's nominee at inception when the lender and borrower name MERS as mortgagee of record or, if a mortgage is acquired by a MERS member, MERS becomes the mortgage holder's nominee pursuant to the MERS governing documents. *See id.* MERS has no legal or beneficial

3

interest in the promissory note, and it does not become holder of the note for the loans for which it serves as mortgagee. *See* NCLC Reports, Bankruptcy and Foreclosures Edition, vol. 23, at 10 (Nov./Dec. 2004).

Following execution of the assignment here, which merely records that the note was transferred out of the MERS system, MERS retained no interest whatsoever in the mortgage, or in this matter. Because, as explained above, MERS does not become holder of the promissory note or obtain any legal or beneficial interest in the note, it is not a party to any litigation between the note-holder and mortgagor. Accordingly, it has no interest in the instant matter and is not a party to it.

## POINT II

### STEVEN J. BAUM, P.C. DOES NOT REPRESENT MERS

The assignment of the mortgage at issue from MERS to Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18 was accomplished within the MERS framework and did not create an attorney-client relationship between Baum and MERS. Specifically, the assignment was completed by the execution of paperwork by Elpiniki Bechakas, Esq. on August 31, 2009. Ms. Bechakas is an attorney employed by Baum. She also holds the position of Assistant Secretary and Vice President of MERS pursuant to the signing authority granted to her by MERS. MERS granted this signing authority to Ms. Bechakas -- as well as several other attorneys in several other law firms -- as a convenience to MERS to allow for assignments to be completed expeditiously.

Because MERS is frequently involved in mortgage-related legal proceedings across the country, it streamlined the process for effecting assignments. Specifically, an "Agreement for

Signing Authority ("Agreement") was entered into between MERS, Baum and, in this case, Homecomings Financial, LLC, which granted certain Baum attorneys limited signing authority on behalf of MERS. An accompanying Corporate Resolution from MERS specifically appointed Ms. Bechakas, among other attorneys, an Assistant Secretary and Vice President of MERS for the limited purpose of performing a merely ministerial act -- executing mortgage documents, including assignments of mortgages necessary to foreclose on a mortgage loan registered on the MERS system. The Agreement granted Ms. Bechakas signing authority only and nothing more. A copy of this Agreement is annexed hereto. Nowhere does the Agreement nor the Resolution indicate that Ms. Bechakas, Baum, or any attorney or employee of Baum shall act as an attorney for MERS. Importantly, this Agreement was also executed by the Vice President of MERS.

Granting this type of signing authority to outside attorneys has allowed MERS to eliminate the unnecessary and time-consuming steps involved in having the necessary paperwork shuttled back and forth to MERS for signature and execution. Pursuant to this initiative by MERS to streamline the assignment process, several attorneys at Baum, including Ms. Bechakas, received appointments as "Assistant Secretary and Vice President" of MERS. MERS and Baum entered into a specific "agreement for signing authority" which outlined the duties of this appointment, and confirmed MERS' agreement to allow the attorneys to sign certain forms, including the assignments. The agreement does not create an attorney-client relationship between Baum and MERS.

Indeed, the documentary evidence demonstrates that there was no attorney-client relationship between MERS and Baum. Under New York law, an attorney-client relationship "arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services." *Priest v. Hennessy*, 51 N.Y.2d 62, 68-69, 431 N.Y.S.2d 511, 514

5

(1980). Here, the only purpose for granting signing authority to Ms. Bechakas was to allow her to represent Baum's clients more easily, by facilitating the execution of assignments, and not to provide legal advice or legal services for MERS.

There are several factors that courts have considered in determining whether an attorney-client relationship exists, including: (1) whether a fee was paid or fee arrangement entered into; (2) whether there is a written contract or retainer agreement indicating that the attorney accepted representation; (3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; (4) whether the attorney represented the individual in an aspect of the matter, such as a deposition; (5) whether the attorney excluded the individual from some aspect of the litigation in order to protect another client's interests; and (6) whether the purported client believed that the attorney was representing him or her and whether that belief was reasonable. *See Catizone v. Wolff*, 71 F.Supp.2d 365, 368 (S.D.N.Y. 1999) (internal citations and quotations omitted). Each and every one of these questions must be answered in the negative, and demonstrate that there was not and is not an attorney-client relationship between Baum and MERS.

"[F]ormality is not essential to the formation of an attorney-client relationship." *McLenithan v. McLenithan*, 273 A.D.2d 757, 758, 710 N.Y.S.2d 674, 675 (3d Dep't 2000). Rather, "it is necessary to look at the words and actions of the parties to ascertain if such a relationship was formed." *Id.* (internal citations and quotations omitted). Here, the words and actions of MERS and Baum demonstrate that their mutual intention was simply for MERS to delegate signing authority to Ms. Bechakas in order to expedite the assignment. While formality is not essential, it is present in this case in the form of the Agreement for Signing Authority, which memorializes the limited scope of Ms. Bechakas' signing authority, and demonstrates the

6

absence of an attorney-client relationship. MERS is a sophisticated business entity. Had it wished to form an attorney-client relationship, it could have expressly provided for one in the written documents that were executed and which govern the relationship between it and Baum. *See generally W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."). There is, quite simply, no reason to look beyond the terms of the Agreement Corporate Resolution to impose an attorney-client relationship that was neither intended nor expressed.

In *Chang v. Pi*, 288 A.D.2d 378, 380, 733 N.Y.S.2d 471, 473 (2d Dep't 2001), the trial court found that the defendant attorneys represented both the buyers and sellers to a real estate transaction and found that they committed malpractice. It was undisputed that the defendant attorneys represented the sellers. The Appellate Division reversed and held that there was no attorney-client relationship between the defendant attorneys and the buyers, even though various documents listed the defendant attorneys as buyers' attorneys because there was also no evidence that the defendant attorneys undertook any specific task for the buyers relative to their purchase of the parcels. *See id.*

Likewise here, there can be no dispute that Baum has not been enlisted to perform a specific task for MERS relative to this action, and there is consequently no evidence that an attorney-client relationship exists. *See also Volpe v. Canfield*, 237 A.D.2d 282, 283, 654 N.Y.S.2d 160, 162 (2d Dep't 1997) ("to establish an attorney-client relationship there must be an explicit undertaking to perform a specific task").

Baum's representation in this matter is limited to GMAC as servicer for Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18. As explained above, MERS has no interest in this litigation and is not represented by Baum, either in this matter or in any other.

## POINT III

### THERE IS NO CONFLICT OF INTEREST

Because, as explained above, Baum does not represent MERS, which is not a party to this action, Baum does not have a conflict of interest in violation of any ethical rule. New York's Rules of Professional Conduct, Rule 1.7, entitled "Conflict of interest: current clients," provides, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>
> > (1) the representation will involve the lawyer in representing differing interests;
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> >
> > (4) each affected client gives informed consent, confirmed in writing.

The rule prohibits an attorney from undertaking a representation if it will involve the attorney in representing differing interests. As an initial matter, there is no simultaneous representation by Baum because, as described in the preceding section, Baum does not represent MERS.

Moreover, the interests of MERS are not adverse to the interests of GMAC as servicer for Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18, Baum's client in this matter. Unlike a servicer, which may have an economic interest in the debt or be the actual or constructive holder of the note, MERS has no legal or beneficial interest in the promissory note, and it does not become holder of the note for loans for which it serves as mortgagee. *See* NCLC Reports, Bankruptcy and Foreclosures Edition, vol. 23, at 10 (Nov./Dec. 2004). MERS likewise has no beneficial interest in the mortgage in its role as nominee for the holder. *See id.* This is evidenced by language included in the uniform MERS mortgage, which clearly discloses that MERS serves as the mortgagee and as nominee for the lender, its successors and assigns. In this role, MERS represents the interests of the MERS member-lender when the borrower executes and delivers the note and mortgage, as well as any other MERS members to whom the lender transfers the note. The fact that an attorney vested with signing authority executed the assignment to Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18 does not suffice to create an interest in the assignment on behalf of MERS. Such a result would be contrary to the entire framework and purpose of MERS, which was established to streamline and expedite the process of mortgage transfers, not to complicate the system by investing MERS with interests in assignments that were not intended or anticipated.

If MERS did have an interest in the mortgage, therefore, it would undoubtedly be aligned with the Secured Creditor in seeking to protect that interest in this matter. But, as previously

9

stated, MERS has no interest, and thus there simply is not another interest that could create a conflict of interest for Baum.

In addition, Rule 1.7 provides that an attorney may undertake the simultaneous representation if the attorney can competently represent the interests of each client and if each client consents to the representation after full disclosure. *See* Rule 1.7(b). Both MERS and Homcomings were and are fully aware of the fact that attorneys employed by Baum have limited authority to execute documents on behalf of MERS. Indeed, the granting of this authority was part of a number of steps taken to streamline the process for both MERS and various foreclosing entities. As such, both MERS and Homecomings were and are fully aware of the implications of this arrangement, the advantages and risks involved, and have fully consented to them. Indeed, the written Agreement between Homecomings, MERS and Baum reflects the consent of all parties to this arrangement.

Thus, the present situation, which involved MERS' grant of signing authority to an attorney employed by Baum for the very purpose of effectuating the type of assignment that is at issue in this case, stands in sharp contrast to those cases where an attorney represents adverse parties in an action. For example, in *In re Rogoff*, 31 A.D.3d 111, 818 N.Y.S.2d 366 (4th Dep't 2006), the uncontroverted evidence established that the same attorney improperly represented both the buyer and sellers in the sale of motel property and did not make the necessary disclosures to either party to the transaction. In such a situation, the attorney clearly has established an attorney-client relationship with each party, and the fact that their interests are adverse to one another is readily apparent. Here, in contrast, there was plainly no attorney-client relationship between MERS and Baum, and, in any event, the extent of MERS' relationship with

Baum is fully detailed in the written documents provided. Thus, this situation is entirely distinguishable from *Rogoff*.

## POINT IV

### THE DEBTOR MISCHARACTERIZES CASELAW.

The Debtor's argument that Baum Firm has been put on notice that its pattern and practice of submitting mortgage assignments by Bechakas was a violation of 22 NYCRR § 1200.00 and fatal to its claim of standing is a blatant mischaracterization of the facts and holdings of the cases relied upon by the Debtor.

In regard to the *U.S. Bank, N.A. as Trustee for SG Mortgage Securities Asset-Backed Certificates, Series 2006-FRE2 v. Emmanuel*, 2010 N.Y. Slip. Op 50819U (Sup. Ct. Kings County May 11, 2010), the court found that the creditor lacked standing because the assignment only assigned the mortgage and not the Note. Importantly, nowhere did Hon. Arthur Schack state that the assignment was void because it was executed by Ms. Bechakas. Additionally, while the court noted that there was a conflict of interest, the court also noted that if the action were to proceed, that the Baum Firm would have the opportunity to refute the alleged conflict. Notably, at no time did the court issue any warning to the Baum Firm regarding its procedures.

With respect to *In re Michaud*, your affiant personally appeared for oral argument on the Motion for Relief. At no time did Hon. Allan L. Gropper warn the Baum Firm about its execution of assignments, nor did Hon. Gropper deny the Motion pursuant to the "urging" of the United States Trustee. Rather, what actually occurred was that the Baum Firm had submitted supplemental papers rebutting the United States Trustee's allegations regarding standing, however, Hon. Gropper did not read the supplemental papers prior to the hearing. During the course of the hearing, the United States Trustee attempted to persuade the court that he should be

11

entitled to discovery from the creditor in that case. In an attempt to avoid what inevitably would amount to extensive and costly discovery to the creditor, your affiant recommended that the court deny the motion without prejudice to cure any alleged deficiencies in the initial motion filing. Notably, Hon. Gropper did not issue any warnings to the Baum Firm regarding its procedures, nor did the court render any ruling regarding an alleged conflict of interest or rule that the creditor lacked standing solely due to the fact that the Assignment was executed by Ms. Bechakas.

Therefore, the Debtor's allegations that the Baum Firm has been warned about its procedures is wholly inaccurate and should be disregarded by this Court.

## POINT V

### THERE IS NO EVIDENCE THAT THE BAUM FIRM HAS COMMITTED A FRAUD UPON THE COURT OR OTHERWISE ACTED IN BAD FAITH.

It is improper for the court to issue sanctions where there is no indicia of bad faith. *See In re Jensen*, 2010 Bankr. LeXIS 231 at*5 *citing Wilder v. GL Bus Lanes,* 258 F.3d 126. 130 (2d Cir. 2001). "Bad faith…is characterized as an attempt to abuse the judicial process…and [requires the Court] to determine if that party has misrepresented facts in its submissions to the Court." *In re Gorshtein*, 285 B.R. 118, at 124 (Bankr. S.D.N.Y. 2002). Similarly, "'bad faith'…means that the party was motivated by improper purposes… or "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose…." *Grand St. Realty v. McCord,* 2005 U.S. Dist. LEXIS 45314 at *25 (E.D.N.Y. September 30, 2005). "The finding of bad faith must be supported by 'a high degree of specificity in the factual findings' of the

sanctioning court." *McCord*, 2005 U.S. Dist. LEXIS 45314 at *25. "Courts must find bad faith based on clear evidence." *Minbatiwalla*, 424 B.R. at 120.

In the present case, the Debtor alleges that the execution of the assignment was in bad faith and a fraud on the Court. As previously explained, the execution of the assignment was performed pursuant to a mutual agreement entered into between MERS, Homecomings, and the Baum Firm that entitled Ms. Bechakas to execute the assignment. It is clear that by entering into said Agreement the parties to that Agreement were all aware of the roles that would be undertaken. Notably, the Debtor's counsel points to no basis, case law, ethical rule, or legal requirement that would require the disclosure *to this Court*. The only disclosure necessary would be between MERS and Homecomings, which clearly was done when entering into the Agreement. The Debtor cannot show that the execution of the assignment was meritless, nor that the assignment was executed for improper purposes. Therefore, the Debtor has failed to establish any bad faith and the request for sanctions must be denied.

## CONCLUSION

Based on the foregoing, the Debtor's Objection to Claim should be denied in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: January 5, 2011
Buffalo, NY

_____
Natalie A. Grigg, Esq.