UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
(Albany Division)
------------------------------------------------------- x
                                                         :
In re:                                                   :
                                                         :
                                                         :
    GEORGE S. BEVINS, JR.              :    Case No. 10-12856 (REL)
                                                         :    Chapter 13
                                                         :
                                                         :
                                    Debtor.    :
------------------------------------------------------- x

**RESPONSE OF THE UNITED STATES TRUSTEE REGARDING DEBTOR'S
OBJECTION TO PROOF OF CLAIM (#4) AND CREDITOR'S OBJECTION TO
CONFIRMATION**

TO HONORABLE ROBERT E. LITTLEFIELD, JR., UNITED STATES BANKRUPTCY
JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2, submits this response concerning

Debtor's objection to the proof of claim filed by GMAC Mortgage, LLC ("GMAC") as servicer for

Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS18 ("Deutsche Bank") and

GMAC's objection to confirmation. In support of her response, the United States Trustee alleges

as follows:

**SUMMARY OF U.S. TRUSTEE'S POSITION**

GMAC's proof of claim is based on a mortgage ("Mortgage") on real property located at

100 Starks Knob Road, Schuylerville, NY 12871-1914 (the "Property"). The Property is owned

by the debtor, George S. Bevins, Jr. ("Debtor"). The Debtor gave the Mortgage to Homecoming

Financial Network, LLC ("Homecoming") on or about October 27, 2005 as collateral security for

a Note in the principal amount of $107,696 ("Note").

Based on the documents in the record, neither GMAC nor Deutsche Bank have demonstrated

that they have standing to file the proof of claim or to object to confirmation. Moreover, the

assignment of mortgage relied on by GMAC and attached to the proof of claim was signed by

Elpiniki M. Bechakas, as "Assistant Secretary and Vice President" of the Mortgage Electronic

Registration Systems, Inc. ("MERS") on behalf of the original mortgagee, Homecoming Financial Network, LLC.

Undisclosed to the Court by GMAC or its attorneys Steven J. Baum, P.C. (the "Baum Firm") is the fact that Ms. Bechakas is also an attorney with the Baum Firm.  It appears that the Baum Firm represents the assignee (GMAC) and that one of the Baum Firm's attorneys is an officer of the assignor (MERS).

The United States Trustee believes that GMAC has not established that it has a claim against the debtor arising out of the Note, thus GMAC lacks standing in this matter.

### FACTS

1.  The Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on July 30, 2010.  ECF Doc. # 1.

2.  The Debtor listed GMAC Mortgage as a secured creditor on the original Schedule D. ECF Doc. # 1.

3.  Thereafter, the Debtor amended Schedule D to designate the mortgage claim as disputed. ECF Doc. # 25.

4.  On August 26, 2010, GMAC filed a proof of claim for a secured claim and indicated the basis for the claim (box 2) "Mortgage & Note," and the basis of perfection (box 4) "Mortgage."

5.  Attached to the proof of claim is an itemization of the claim amount, the Note, the Mortgage, and an Assignment of Mortgage dated August 31, 2009 from MERS to Deutsche Bank.

6.  There is nothing attached to the proof of claim evidencing a conveyance of the Note to Deutsche Bank.

7.  There is nothing attached to the proof of claim evidencing a conveyance of the Note or the Mortgage to GMAC.

## ARGUMENT

### I.    Deutsche Bank Has Not Established That it is a Creditor

11 U.S.C. § 501(a) permits creditors to file proofs of claim.  According to 11 U.S.C. § 101(10) a creditor is "an entity that has a claim against the debtor that arose at the time of or before the order of relief concerning the debtor."  A claim is defined in 11 U.S.C. § 101(5) as "a right to payment...or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."

With respect to Deutsche Bank, although is a document in the record establishing an assignment of the Mortgage to Deutsche Bank, there is nothing in the record to demonstrate that there was an assignment of the underlying Note.  The Note is the instrument that memorializes the Debtors contractual obligation to re-pay the money loaned, thus would be the basis for a claim against the debtor.

In a recent opinion involving similar facts (albeit in the context of a motion for relief from stay), Hon. Martin Glenn, Bankruptcy Judge, Southern District of New York surveyed New York case law to determine whether a mortgagee that does not also hold the underlying promissory note has standing to request relief from the automatic stay in bankruptcy court.  Judge Glenn concluded that, according to state law, the assignment of the mortgage standing alone is a nullity and cannot be the basis of a state court foreclosure action, therefore, is insufficient to establish standing to request or obtain relief from stay in bankruptcy court:

> Within the context of a bankruptcy proceeding, state law governs the determination of property rights. *See Butner v. United States*, 440 U.S. 48, 54 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989). Under New York law "foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Kluge v. Fugazy*, 145 A.D.2d 537, 538 (2d Dept. 1988) (citing cases); *see also HSBC Bank USA, Nat. Ass'n v. Miller*, 26 Misc.3d 407, 411-12 (N.Y. Sup. Ct., Sullivan County 2009). As the courts in *Kluge* and *HSBC* have recognized, this rule of law dates back over one hundred and forty years, when the New York

3

> Court of Appeals held: "[a]s a mortgage is but an incident to the debt
> which it is intended to secure the logical conclusion is that a transfer
> of <u>the mortgage without the debt is a nullity</u>, and no interest is
> acquired from the debt, and exist independently of it. This is the
> necessary legal conclusion, and recognized as the rule by a long
> course of judicial decisions." 7 *Merritt v. Bartholick*, 36 N.Y. 44, 45
> (1867).

<u>In re Tandala Mims</u>, Chap. 7 Case No. 10-14030 (Bankr. S.D.N.Y. 2010)(emphasis added), copy

attached hereto and made a part hereof as Exhibit "1."

This matter also was addressed recently by the Supreme Court, Kings County in a mortgage

foreclosure action filed by the Baum Firm on behalf of a mortgagee that did not also hold the note.

The court found that the plaintiff-mortgagee lacked standing to bring the foreclosure action and

dismissed the case *with* prejudice.  <u>U.S. Bank , N.A. v. Emmanuel</u>, 27 Misc.3d 1220(A), 2010 WL

1856016, 2010 NY Slip Op. 50819(U)(Supr. Ct. Kings Co., May 11, 2010), copy attached hereto and

made a part hereof as Exhibit "2."  The court in Emmanuel based the lack of standing determination,

in part, on the Court of Appeals decision in <u>Saratoga County Chamber of Commerce, Inc. v. Pataki</u>,

100 NY2d 801.

> Standing to sue is critical to the proper functioning of the judicial
> system. It is a threshold issue. If standing is denied, the pathway to
> the courthouse is blocked ... The rules governing standing help
> courts separate the tangible from the abstract or speculative injury,
> and the genuinely aggrieved from the judicial dilettante or
> amorphous claimant.

<u>Id</u>. at 812.

The documents in the record do not establish that Deutsche Bank is the holder of the

Note.  As such, Deutsche Bank is not a "creditor" of this Debtor as that term is defined in the

Bankruptcy Code.  Deutsche Bank, therefore, lacks statutory authority to file a proof of claim or

to object to confirmation.

## II.   GMAC Has Not Established That it is a Creditor

There is no documentation in the record linking GMAC to either Homecoming, MERS, or Deutche Bank.  In the proof of claim and the objection to confirmation, it is asserted that GMAC is a "secured creditor" by virtue of its purported status as "servicer" for Deutsche Bank.  There Notwithstanding the lack of any indicia that GMAC is authorized to act on behalf of Deutsche Bank, the agent can never be granted broader authority than that of the principal.  See generally Restat. 3d Agency § 3.04.

Because Deutsche Bank is not a "creditor," Deutsche Bank could not impart such status on GMAC, as its representative.  GMAC has no basis for filing the proof of claim or the objection to confirmation, as its principal lacks such authority to do so directly.

## III.   Submission of Documents in This Case by the Baum Firm

In this bankruptcy case, the Baum Firm filed the GMAC proof of claim.  The proof of claim incorrectly represents to the Court that GMAC and Deutsche Bank are secured creditors by virtue of the Note and Mortgage.  The same representations were made by the Baum Firm in the objection to confirmation.  As explained above, these representations are inconsistent with the attachments to the proof of claim.   It appears that the attorneys filing the proof of claim and objection to confirmation did not take adequate steps to verify their statements as required under Rule 9011.

The Baum Firm recently was sanctioned $5,000 for submitting pleadings with defects similar to the documents filed in this Court.  Federal Home Loan Mtg. Corp. v. Raia, 29 Misc.3d 1226(A), 2010 WL 4750043, 2010 NY Slip Op. 52003(U) (Dist. Ct. Nassau Co. Nov. 23, 2010).[1]  The court found that the Baum Firm had filed a petition containing "false statements (that) went directly to the heart of the matter of standing. Id. at *2.  Thus, the court found that the representations in the pleadings were intended to mislead the court as to the petitioner's standing.  The state court judge called the Baum Firm's actions "reprehensible,"

---

[1] The court also ordered the Baum Firm to pay the mortgagor's attorney's fees and costs in the amount of $14,532.50.

petitioner's firm is highly versed in issues of standing as evidenced
by the firm's abundance of litigation in this area. Specifically,
Baum has recently faced numerous standing issues concerning
assignment, for which its cases were dismissed. [*See Deutsche
Bank Nat. Trust Co. v. McRae,* 27 Misc.3d 247, 894 N.Y.S.2d 720
(2010); *Citigroup Global Markets Realty Corp. v. Randolph,* 2009
N.Y. Slip Op. 52567(U) (2009); *HSBC Bank USA, Nat. Ass'n v.
Miller,* 26 Misc.3d 407, 889 N.Y.S.2d 430 (2009).]

Further complicating the matter in this bankruptcy case is the fact that the Assignment

attached to the proof of claim was signed by "Elpiniki M. Bechakas" as Assistant Secretary and

Vice President of MERS, as nominee for Homecoming.  Ms. Bechakas also is an attorney with

the Baum Firm.  This raises a conflict of interest issue because the Baum Firm appears on both

sides of the mortgage assignment.

This type of conflict of interest has been raised with the Baum Firm repeatedly in state court.

See HSBC Bank USA, N.A. v. Yeasmin, 27 Misc.3d 1227(A), 2010 WL 2089273, 2010 NY Slip

Op. 50819(U)50927(U)(Supr. Ct. Kings Co., May 24, 2010); LaSalle Bank N.A. v. Smith, 26

Misc3d 1239(a), 2010 WL 1007826 (Supr. Ct. Kings Co., Mar. 22, 2010); U.S. Bank N.A. v.

Guichardo, 22 Misc3d 1116(A) 2009 WL 224693 (Supr. Ct. Kings Co. Feb 2, 2009).

In each of these cases, Ms. Bechakas was the corporate officer who signed the mortgage

assignment on behalf of MERS and the Baum Firm represented the plaintiff.  And in each case, the

Supreme Court judge raised the conflict of interest issue in the context of the New York Rules of

Professional Conduct.

For example, the court in Emmanuel indicated that even if it had found that the plaintiff had

standing, the Baum Firm would need to address the conflict of interest issue.  The court said that had

it not found a lack of standing, it would require Steven J. Baum, Esq. (the individual, not the firm)

to submit an affirmation "explaining whether both MERS ... and US Bank gave 'informed consent,

confirmed in writing' in the instant action, and the information presented to them by the Baum firm

'included the implications of the common representation, including possible effects on loyalty,

confidentiality and the attorney-client privilege, and the advantages and risks involved.'" U.S. Bank, N.A. v. Emmanuel, emphasis added.  The other cases cited above contain similar analyses.

The courts cited a Fourth Department case (where the Baum Firm is located) in which the lawyer was censured for representing the buyer and seller in a  commercial real estate transaction without making adequate disclosure of the dual representation to the parties.  See In re Rogoff, 31 AD3d 111 (4th Dept. 2006).[2]

## IV.   THE BAUM FIRM RESPONSE

On January 5, 2010, the Baum Firm submitted a memorandum of law "on behalf of Steven J. Baum, P.C." ECF Doc. # 28.  In their brief, the Baum Firm refers to GMAC as the "secured creditor" and the "holder of a note and mortgage on real property commonly known as 178 Route 4N, Northumberland, New York."  Brief at 1.  This statement conflicts with the documents in the record.  Nowhere has the Baum Firm identified by what instrument it is purported that GMAC became the holder of the Note and Mortgage.

Also in the brief, the Baum Firm acknowledges the holding in U.S. Bank , N.A. v. Emmanuel – that the court dismissed the action because the plaintiff who received only an assignment of the mortgage and not an assignment of the promissory note lacked standing to foreclose.  Brief at 11. The Baum Firm fails, however, to explain why in this case the outcome should be any different. Here, there is nothing in the record to support the assertion that GMAC is a "secured creditor" or that the Note and Mortgage were assigned to it.

As far as the Baum Firm's characterizations of the hearing before Hon. Allan L. Gropper and the position of the United States Trustee in In re Michaud, the transcript of that proceeding speaks for itself and is attached hereto and made a part hereof as Exhibit "3."  At the conclusion of the hearing, Judge Gropper addressed the issue of Ms. Bechakas signing the assignment on behalf of MERS, indicating, "I think the U.S. Trustee has a point...the MERS signature as nominee for

---

[2] The Fourth Department noted that the lesser sanction of censure was imposed because the lawyer had no financial interest in the transaction, charged ½ of his normal fee, and expressed remorse.

CitiMortgage is that of Ms. Bechakas." Ultimately, the motion was dismissed without prejudice, therefore, the matter of Ms. Bechakas' dual role – both as MERS officer and Baum attorney – was not resolved.

<u>V.</u>   <u>CONCLUSION</u>

The documents in the record before this Court speak for themselves.  To the extent that GMAC and Deutsche Bank have not established that they are "creditors" within the meaning of the Bankruptcy Code, they lack standing to file a proof of claim or to object to confirmation.

To the extent the Court is inclined to consider sanctions against the law firm that filed the documents, the United States Trustee supports such an outcome in order to protect the integrity of the bankruptcy system.  The United States Trustee reserves her rights to bring such other and further actions against the creditor and the law firm in this case as may be appropriate.

WHEREFORE, for the reasons set forth herein, the United States Trustee supports a finding by this Court that the documents in the record do not establish that GMAC or Deutsche Bank are creditors of the debtor, as such terms is defined in the Bankruptcy Code, and for such other and further relief as the Court deems just and proper.

Dated: Albany, New York
       December 6, 2010

Respectfully Submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE
FOR REGION 2

By:    /s/ Lisa M. Penpraze
       Lisa M. Penpraze, Assistant United
        States Trustee
       74 Chapel Street- Suite 200
       Albany, NY 12207
       (518) 434-4553

# EXHIBIT "1"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:                                               :
                                                     :
                                                     :
TANDALA MIMS AKA TANDALA WILLIAMS, :          Chapter 7
                                                     :
                                                     :          Case No. 10-14030 (MG)
                                                     :
                            Debtor.          :
---------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING WELLS FARGO BANK, N.A.'S**
**MOTION FOR TERMINATION OF THE AUTOMATIC STAY**

*A P P E A R A N C E S :*

STEVEN J. BAUM, P.C.
*Attorneys for Secured Creditor*
*Wells Fargo Bank, N.A.*
220 Northpointe Parkway, Suite G
Amherst, NY 14228
By:    Phillip Mahony, Esq.

LAMONICA HERBST & MANISCALCO, LLP
*Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793
By:    Salvatore Lamonica, Esq.

LAW OFFICE OF DAVID BRODMAN
*Attorney for Debtor Tandala Mims*
633 Lydig Avenue
Bronx, NY 10462
By:    David Brodman, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

Wells Fargo Bank, N.A. ("Wells Fargo") moves the Court for an order lifting the

automatic stay with regard to 1167 Grenada Place, Bronx, NY 10466 (the "Property") pursuant

to section 362(d) of the Bankruptcy Code (the "Motion").  Wells Fargo desires to exercise its

rights under a mortgage (the "First Mortgage" or "Mortgage") and promissory note (the "Note"),

including, but not limited to, the foreclosure of the Property.  (ECF Doc. # 9.)  The Court held a

hearing on the Motion on October 20, 2010 and took the matter under submission.  The Court

denies Wells Fargo's motion to lift the automatic stay for the reasons enumerated below.

## BACKGROUND

Tandala Mims, a/k/a Tandala Williams (the "Debtor"), filed a voluntary petition under

chapter 7 of the Bankruptcy Code on July 27, 2010.  (ECF Doc. # 1.)  Wells Fargo contends that

it is a secured creditor of the Debtor by an assignment of mortgage dated September 13, 2010, in

the principal amount of $374,037.00 (the "Assignment").  The property is subject to two

mortgages.  The First Mortgage to Wells Fargo, dated May 10, 2004, indicates that the lender

was Lend America, and was recorded in the name of Mortgage Electronic Registration Systems

("MERS"), as nominee for Lend America.[1]  Wells Fargo claims that the Debtor owes

$355,398.13 on the First Mortgage.  The Debtor also has a second mortgage with M&T Bank

(the "Second Mortgage"), which when combined with the First Mortgage and lien, totals

$389,647.13.  In support of its standing to bring the Motion, Wells Fargo attaches (1) loan

documents, including the First Mortgage and accompanying Note; (2) a copy of the Debtor's

Schedules A and D (the "Schedules"),[2] in which the Debtor lists Wells Fargo as a secured

---

[1]      The State of New York's Banking Department website indicates that, "[o]n November 30, 2009, The
Federal Housing Administration (FHA) withdrew the FHA approval of . . . [Lend America].  As a result, Lend
America was prohibited from originating and underwriting new FHA-insured mortgages or participating in the FHA
single family insurance program.  Effective December 1, 2009, Lend America discontinued its mortgage origination
operations.  However, the company continues service [sic] mortgage loans."  IDEAL MORTGAGE BANKER D/B/A
LEND AMERICA, http://www.banking.state.ny.us/lendamerica.htm (last visited October 21, 2010).

[2]      The Schedules were attached to the Debtor's petition.  Schedule A lists Real Property and Schedule D lists
Creditors Holding Secured Claims.  (ECF Doc. # s 1, 9.)

creditor with respect to the Property and (3) a lift-stay worksheet, dated September 16, 2010, pursuant to Local Rule 4001-1(c) (the "Worksheet").

The Note attached to the Motion was originally made payable to Lend America.  The last page of the Note, however, contains a stamped endorsement, "Paid to the Order of Washington Mutual Bank, FA, Without Recourse Lend America."  (ECF Doc. # 9, at Ex. 1.)  No evidence is offered that Washington Mutual Bank ever assigned or transferred the Note to Wells Fargo or to any other party.  Washington Mutual Bank was taken over by the FDIC on September 25, 2008, and its assets were sold to J.P. Morgan Chase ("Chase") on that same date.  Press Release, Fed. Deposit Ins. Corp., *JPMorgan Chase Acquires Banking Operations of Washington Mutual* (Sept. 25, 2008) (on file with FDIC).  There is nothing in the record to indicate whether Chase acquired the Note and whether Chase, in turn, subsequently transferred the Note to Wells Fargo.

The Worksheet reflects that the Debtor's total pre-petition and post-petition indebtedness to Wells Fargo on the Property, as of the petition date, was $355,398.13; that the Debtor's last payment was received on June 4, 2010 (but was placed in a suspense account); and that the Debtor has missed six payments, from April 1, 2010 to September 1, 2010.  In support of its claim that the Debtor lacks any substantial equity in the property, Wells Fargo attaches the Debtor's Schedule A and Schedule D, which list the current value of the Property as $430,000. Assuming the accuracy of this figure, the Debtor would have exempt equity in the property.[3]

---

[3]    The Bankruptcy Code contains a set of federal exemptions and permits debtors to choose between either federal or state exemptions.  11 U.S.C. § 522(b)(1).  However, the Bankruptcy Code also permits individual states to "opt-out" of the federal exemption scheme.  *See e.g.*, *In re Corio*, 190 B.R. 498, 499 (Bankr. E.D.N.Y. 1995). Pursuant to N.Y. DEBT. & CRED. LAW § 284, New York is one state that has opted-out from the federal exemption scheme.  Consequently, the real property exemptions of CPLR § 5206 govern.  Contained within CPLR § 5206(a) is New York's homestead exemption, which provides that qualifying real property is exempt from "application to [satisfy] a money judgment" if the value of the real property does not "[exceed] fifty thousand dollars in value above liens and encumbrances, [and is] owned and occupied as a principal residence."  Qualifying real property under CPLR § 5206(a)(1) includes "a lot of land with a dwelling thereon."

The Debtor's Schedules claim the property as exempt and states the Debtor's intention to retain the property.

The signature on the Worksheet indicates that it was prepared by Craig C. Zecher, a Wells Fargo legal process specialist.  Despite the fact that Wells Fargo did not obtain an assignment of the Mortgage until September 13, 2010, seven days before the lift-stay motion was filed on September 20, 2010, the Worksheet provides information about payment defaults dating back to April 1, 2010.  Wells Fargo's ability to certify the accuracy of the information provided in the Worksheet is questionable given its only recently acquired interest in the First Mortgage.[4]

Neither the Debtor's counsel nor the chapter 7 trustee filed anything in response to the lift-stay motion.

## DISCUSSION

The Court concludes that Wells Fargo lacks standing to request relief from the automatic stay.

### A.  Wells Fargo is Not a "Party in Interest" And Therefore Lacks Standing to Request Relief From the Automatic Stay

Section 362(a) of the Bankruptcy Code imposes an automatic stay on all litigation against the Debtor, as well as "any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a).  Section 362(d) of the Bankruptcy Code provides that "[o]n request of a *party in interest* and after notice and a hearing, the court shall grant relief from the stay . . . ."  11 U.S.C. § 362(d) (emphasis added).  The term "party in interest" is nowhere defined in the Bankruptcy Code.  However, the Supreme Court has suggested that when an

---

[4]    The Worksheet states:  "I certify that the information provided in this form and/or any exhibits attached to this form (other than the transactional documents attached as required by paragraphs 1, 2 and 3, immediately above) is derived from records, that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice."  The Worksheet was then signed by Craig C. Zecher, Legal Process Specialist.  (ECF Doc. # 9.)

undefined term is used in bankruptcy law, "[i]n determining the term's scope—and its limitations—the purposes of the Bankruptcy Act 'must ultimately govern.'" *Kokoszka v. Belford*, 417 U.S. 642, 645 (1974) (citing *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)).

Though courts have interpreted the "purposes of the Bankruptcy Act" differently, the Second Circuit explained in *In re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983), "[b]ankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes . . . ." The *Comcoach* court went on to find that in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party had to be either a creditor or a debtor.[5] *Id.* In support of this assertion, the court cited to the Bankruptcy Code's legislative history "which suggests that, notwithstanding the use of the term 'party in interest', [sic] it is only creditors who may obtain relief from the automatic stay." *Id.* (citing H.R. REP. NO. 95-595, (1978), *reprinted in* 1978 U.S.C.C.A.C. 5787, 6136 ("Creditors may obtain relief from the stay if their interests would be harmed by continuance of the stay.")). It follows from the Second Circuit's analysis that unless Wells Fargo qualifies as a "creditor," it does not have standing to request relief from the automatic stay.

Section 101(10) of the Bankruptcy Code defines a "creditor" as an:

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>
> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
>
> (C) entity that has a community claim.

11 U.S.C. § 101(10). This definition requires consideration of what constitutes a "claim," which conveniently is also a defined term in section § 101(5) of the Bankruptcy Code.

---

[5] The facts in *Comcoach* involved a bank, and therefore this language should not be read to exclude from the definition of a "party in interest" the United States Trustee or other corporate or corporeal entities specifically given standing in the Bankruptcy Code or applicable case law.

Section 101(5)(A) of the Bankruptcy Code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."  Even under this broad definition, Wells Fargo has not demonstrated its "right to payment" because, as discussed more fully below, it lacks the ability to seek the state law remedy of foreclosure. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor).

### B.  Wells Fargo Lacks Standing to Exercise any State Law Remedies

Within the context of a bankruptcy proceeding, state law governs the determination of property rights.  *See Butner v. United States*, 440 U.S. 48, 54 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989).  Under New York law "foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Kluge v. Fugazy*, 145 A.D.2d 537, 538 (2d Dept. 1988) (citing cases); *see also HSBC Bank USA, Nat. Ass'n v. Miller*, 26 Misc.3d 407, 411-12 (N.Y. Sup. Ct., Sullivan County 2009).  As the courts in *Kluge* and *HSBC* have recognized, this rule of law dates back over one hundred and forty years, when the New York Court of Appeals held:

> [a]s a mortgage is but an incident to the debt which it is intended to secure the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is acquired from the debt, and exist independently of it.  This is the necessary legal conclusion, and recognized as the rule by a long course of judicial decisions.

*Merritt v. Bartholick*, 36 N.Y. 44, 45 (1867). Because Wells Fargo has not offered evidence that it owns the original Note, Wells Fargo lacks standing to foreclose on the Mortgage and has therefore failed to demonstrate it is the holder of a "claim."

According to N.Y. REAL PROPERTY LAW § 244, assignments in New York state may be effectuated by the delivery of the relevant note and mortgage. An assignment need not be evidenced by a written assignment. *In re Conde-Dedonato*, 391 B.R. 247, 251 (Bankr. E.D.N.Y. 2008) (citing *Flyer v. Sullivan,* 284 A.D. 697, 699 (1st Dept. 1954) ("Our courts have repeatedly held that a bond and mortgage may be transferred by delivery without a written instrument of assignment.")). Delivery requires the physical transfer of the instrument from assignor to assignee. *Bank of New York v. Mulligan*, No. 29399-07, 2010 WL 3339452, at *6 (N.Y. Sup. Ct., Kings County Aug. 25, 2010).

Wells Fargo has not supplied the Court with any evidence that the Note was physically delivered or assigned pursuant to a written agreement. Here, the Note only indicates a transfer from Lend America to Washington Mutual Bank and not to Wells Fargo. Wells Fargo has not presented any evidence that it is in possession of the original Note, or that it received the Note via a valid written assignment. Arguably, Wells Fargo has proved that it is the title holder of the Mortgage, as of a date seven days before the filing of the Motion, but the Assignment of Mortgage does not include language assigning the Note along with the Mortgage. Had the assignor desired to assign the Note using the same instrument, it could have used different language to accomplish this end. MCKINNEY'S REAL PROPERTY LAW § 258 [Schedule O], contains a form "Assignment of Mortgage" which clearly assigns both the mortgage and the underlying debt. The form contains the following language:

> Know that ........, assignor, in consideration of ........ dollars, paid by
> .............., assignee, hereby assigns unto the assignee, a certain mortgage

>made by .............., given to secure payment of the sum of ........ dollars and
>interest, dated the ........ day of ........, recorded on the ........ day of ........, in
>the office of the ............ of the county of ............, in liber ........ of
>mortgages, at page ........, covering premises ........, together with the bond or
>obligation described in said mortgage, and the moneys due and to grow due
>thereon with the interest,
>To have and to hold the same unto the assignee, and to the successors, legal
>representatives and assigns of the assignee forever.
>In witness whereof, the assignor has hereunto set his hand and seal this
>........ day of ........, nineteen hundred and ........
>In presence of:

As one court recently cautioned, "[w]hile an assignor is not required to use statutory Form [sic] O, if it intends to assign the mortgage and the underlying debt, it is well advised to employ language that unambiguously does so." *Deutsche Bank Nat. Trust Co. v. McRae*, 894 N.Y.S.2d 720, 722 (N.Y. Sup. Ct., Allegany County 2010). As Wells Fargo has failed to prove it owns the Note, it has failed to establish that it has standing to pursue its state law remedies with regard to the Mortgage and Property.

## C.  The Court Has Additional Reservations Regarding the Validity of the Mortgage Assignment

In support of its Motion, Wells Fargo annexed a copy of the Mortgage as Exhibit A to the Motion. While there is nothing that undermines the facial validity of the Mortgage, there are issues surrounding the Assignment from MERS, as nominee for Lend America, to Wells Fargo. The September 13, 2010 Assignment suggests that it may have been executed simply for purposes of enabling Wells Fargo to file a lift-stay motion. An assignment in anticipation of bringing a lift-stay motion does not in and of itself indicate bad faith. However, in the absence of a credible explanation, describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted. Second, MERS, as nominee for Lend America, and presumably its Assistant Vice President, John Kennerly, whose signature is on the assignment, have an address in Ocala, Florida. Kennerly's signature on the Assignment was, however,

notarized in South Carolina, the address shown on the Assignment for Wells Fargo.  Did

Kennerly personally appear before the notary as represented?  If not, is the Assignment valid?

When asked about these issues during the October 20, 2010 hearing, Wells Fargo's counsel was

unable to answer any questions about the supporting documents.  All of these matters will need

to be addressed if Wells Fargo renews its lift-stay motion.  Under FED. R. BANKR. P. 9014(a), the

Motion to lift the automatic stay created a contested matter.  Under that Rule, "No response is

required . . . unless the court directs otherwise."  *Id.*  In the event a new lift-stay motion is filed,

Debtor's counsel and the chapter 7 trustee are directed to file a response.

## CONCLUSION

For the reasons explained above, Wells Fargo's motion to lift the automatic stay is

**DENIED** without prejudice.

**IT IS SO ORDERED.**

DATED:      October 27, 2010
             New York, New York

                                          _____**/s/Martin Glenn**_____
                                               MARTIN GLENN
                                          United States Bankruptcy Judge

EXHIBIT "2"

27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op. 50819(U)

**(Table, Text in WESTLAW), Unreported Disposition**

**(Cite as: 27 Misc.3d 1220(A), 2010 WL 1856016 (N.Y.Sup.))**

▷

Judges and Attorneys

NOTE: THIS OPINION WILL NOT APPEAR IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

Supreme Court, Kings County, New York.
U.S. BANK, N.A., As Trustee for SG Mortgage Securities Asset Backed Certificates, Series 2006-FRE2, Plaintiff,
v.
Arriana EMMANUEL, et. al., Defendants.

No. 19271/09.
May 11, 2010.

Steven J. Baum, P.C., Amherst, for Plaintiff-US Bank.

ARTHUR M. SCHACK, J.

**\*1** The *ex parte* motion of plaintiff U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR SG MORTGAGE SECURITIES ASSET BACKED CERTIFICATES, SERIES 2006-FRE2 [U.S. BANK], for service of a supplemental summons by publication upon defendant ARRIANA EMMANUEL [EMMANUEL] and related relief, in the instant mortgage foreclosure action for the premises located at 1388 Lincoln Place, Brooklyn, New York (Block 1391, Lot 13, County of Kings) is denied with prejudice. The instant action is dismissed and the instant notice of pendency is cancelled. Plaintiff U.S. BANK never had standing to prosecute this action because of an ineffective assignment of the subject mortgage and note to it. Plaintiff U.S. BANK's attempt to foreclose upon a mortgage in which it has no legal or equitable interest is without foundation in law or fact.

Further, even if this action was not dismissed, there is a conflict of interest in that plaintiff's counsel, Steven J. Baum, P.C., appears to be in violation of 22 NYCRR § 1200.0 (*Rules of Professional Conduct,* effective April 1, 2009) Rule 1.7, "Conflict of Interest: Current Clients." The Baum firm represents both MORTGAGE ELECTRONIC REGISTRATION SYSTEMS [MERS], as nominee for FREMONT INVESTMENT AND LOAN [FREMONT], the ineffective assignor of the instant mortgage, and plaintiff U.S. BANK, the ineffective assignee of the instant mortgage. If the Court did not dismiss the action, the Court would need proof, in an affirmation by Steven J. Baum, Esq., the principal of Steven J. Baum, P.C., that both MERS, as nominee for FREMONT, and U.S. BANK each gave "informed consent, confirmed in writing" to the concurrent conflict of interest in their representation by Steven J. Baum, P.C., with both MERS, as nominee for FREMONT, and U.S. BANK each being "aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client."

### *Background*

Plaintiff's moving papers do not contain exhibits with the underlying mortgage and assignment of the instant mortgage to plaintiff U.S. BANK. I checked the Automated City Register Computer System (ACRIS) website of the Office of the City Register of the City of New York to verify the information in the complaint and moving papers, discovering that defendant EMMANUEL executed the instant mortgage and note on May 3, 2006 and borrowed $480,000.00 from FREMONT. MERS, as

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op.
50819(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 27 Misc.3d 1220(A), 2010 WL 1856016 (N.Y.Sup.))**

nominee for FREMONT, recorded the instant mortgage and note on May 23, 2006, in the Office of the City Register of the City of New York, at City Register File Number (CRFN) 2006000287060. Then, MERS, as nominee for FREMONT, on June 16, 2009, assigned to plaintiff U.S. BANK "said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained and the said Assignor hereby grants and conveys until the said Assignee, the Assignors beneficial interest under the Mortgage." The note was not assigned. The June 16, 2009 assignment of the mortgage and "the full benefit of all the powers and of all the covenants and Provisions therein contained" were recorded on July 17, 2009, in the Office of the City Register of the City of New York, at CRFN 2009000111146. Subsequently, plaintiff U.S. BANK commenced the instant action by filing the summons, complaint and notice of pendency with the Office of the Kings County Clerk on July 30, 2009.

**\*2** The June 16, 2009 assignment was executed by "Elpiniki Bechakas, Assistant Secretary and Vice President" of MERS. Ms. Bechakas is a member of the New York State Bar and her business address, according to the Office of Court Administration's Attorney Registration, is "Steven Baum, P.C., 220 Northpointe Parkway, Suite G, Amherst, N.Y. 14228-1894." Steven J. Baum, P.C. is the attorney for plaintiff U.S. BANK, the assignee. The Court is concerned that the concurrent representation by Steven J. Baum, P.C. of both assignor MERS, as nominee for FREMONT, and assignee plaintiff U.S. BANK is a conflict of interest, in violation of 22 NYCRR § 1200.0 (Rules of Professional Conduct, effective April 1, 2009) Rule 1.7, "Conflict of Interest: Current Clients."

Subsequently, in January 2010, plaintiff U.S. BANK made the instant motion to serve defendant EMMANUEL by publication, pursuant to CPLR Rules 315 and 316, claiming that after a diligent search defendant EMMANUEL could not be found. Plaintiff's complaint correctly states, in ¶ 3, that "[t]he mortgage was subsequently assigned to U.S. BANK." The complaint is silent as to whether the subject note was assigned. However, the affidavit of plaintiff's counsel in support of service by publication incorrectly states, in ¶ 6, that "[t]his action is based upon a bond or note and mortgage which is secured by real property." MERS, as nominee for FREMONT, did not assign the note with the mortgage, but assigned, as noted above, the mortgage and "and the full benefit of all the powers and of all the covenants and Provisions therein contained" and "the Assignors beneficial interest under the Mortgage." This verbiage is not the note.

### Plaintiff's lack of standing

"Standing to sue is critical to the proper functioning of the judicial system. It is a threshold issue. If standing is denied, the pathway to the courthouse is blocked. The plaintiff who has standing, however, may cross the threshold and seek judicial redress ." ( *Saratoga County Chamber of Commerce, Inc. v. Pataki,* 100 N.Y.2d 801 812 [2003], *cert denied* 540 U.S. 1017 [2003] ). Professor Siegel (N.Y. Prac, § 136, at 232 [4d ed] ), instructs that:

[i]t is the law's policy to allow only an aggrieved person to bring a lawsuit ... A want of "standing to sue," in other words, is just another way of saying that this particular plaintiff is not involved in a genuine controversy, and a simple syllogism takes us from there to a "jurisdictional" dismissal: (1) the courts

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op. 50819(U)

**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 27 Misc.3d 1220(A), 2010 WL 1856016 (N.Y.Sup.))**

have jurisdiction only over controversies; (2) a plaintiff found to lack "standing" is not involved in a controversy; and (3) the courts therefore have no jurisdiction of the case when such a plaintiff purports to bring it.

"Standing to sue requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request." ( *Caprer v. Nussbaum* (36 AD3d 176, 181 [2d Dept 2006] ). If a plaintiff lacks standing to sue, the plaintiff may not proceed in the action. ( *Stark v. Goldberg,* 297 A.D.2d 203 [1st Dept 2002] ). "Standing is jurisdictional and goes to a court's authority to resolve litigation, we [the Court] can raise this matter *sua sponte.*" ( *Axelrod v. New York State Teachers' Retirement System,* 154 AD2D 827, 828 [3d Dept 1989] ).

**\*3** The instant June 16, 2009 assignment from MERS, as nominee for FREMONT, to U.S. BANK is a nullity, because MERS, as nominee for FREMONT, did not assign the note, but only assigned "said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained and the said Assignor hereby grants and conveys until the said Assignee, the Assignors beneficial interest under the Mortgage." The Appellate Division, Second Department in *Kluge v. Fugazy* (145 A.D.2d 537, 538 [2d Dept 1988] ), held that a "foreclosure of a mortgage may not be brought by one who has no title to it and *absent transfer of the debt,* the assignment of the mortgage is a nullity [*Emphasis added* ]." Moreover, "a mortgage is but an incident to the debt which it is intended to secure ... the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest

is assigned by it. The security cannot be separated from the debt, and exist independently of it. This is the necessary legal conclusion." ( *Merritt v. Bartholick,* 36 N.Y. 44, 45 [1867]. The Appellate Division, First Department, citing *Kluge v. Fugazy* in *Katz v. East-Ville Realty Co.* (249 A.D.2d 243 [1d Dept 1998] ), instructed that "[p]laintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation in law or fact." Last December, the Appellate Division, Second Department, instructed that "[w]here a mortgage isrepresented by a bond or other instrument, an assignment of the mortgage without assignment of the underlying note or bond is a nullity ( *see Merritt v. Bartholick,* 36 N.Y. 44, 45 [1867]; *Kluge v. Fugazy,* 145 A.D.2d 537, 538." ( *U.S. Bank, N.A. v. Collymore,* 68 AD3d 752, 754 [2d Dept 2009] ).

Therefore, the subject June 16, 2009 assignment is a nullity and plaintiff U.S. BANK has no standing in this action. The instant motion is denied. The instant action is dismissed with prejudice and the instant notice of pendency is cancelled.

### Conflict of interest of plaintiff's counsel

Even if plaintiff could cure the assignment defect, plaintiff's counsel would then have to address its conflict of interest in its concurrent representation of both purported assignor MERS, as nominee for FREMONT, and purported assignee U.S. BANK. 22 NYCRR § 1200.0 (*Rules of Professional Conduct,* effective April 1, 2009) Rule 1.7, "Conflict of Interest: Current Clients," states in relevant part:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing in-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op. 50819(U)

**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 27 Misc.3d 1220(A), 2010 WL 1856016 (N.Y.Sup.))**

terests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

(b) *Notwithstanding the existence of a concurrent conflict of interest* under paragraph (a), a *lawyer may represent a client if:* (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) *each affected client gives informed consent, confirmed in writing. [Emphasis added]*

**\*4** *Rules of Professional Conduct* Rule 1.0 defines various "Terminology" and *Rules of Professional Conduct* Rule 1.0(j) states that "[i]nformed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives." Comment (18) to Rule 1.7 states:

Informed consent requires that each affected client be aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client. Informed consent also requires that the client be given the opportunity to obtain other counsel if the client so desires. *See* Rule 1.0(j) ... When rep-

resentation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege, and the advantages and risks involved.

If the Court allowed the instant action to proceed, Steven J. Baum, Esq., the principal of Steven J. Baum, P.C., would need to provide an affirmation explaining whether both MERS, as nominee for FREMONT, and U.S. BANK gave "informed consent, confirmed in writing" in the instant action, and the information presented to them by the Baum firm included "the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege, and the advantages and risks involved."

The Appellate Division, Fourth Department, the Department where both Ms. Bechakas and Mr. Baum are registered, censured an attorney for, *inter alia,* violating 22 NYCRR § 1200.24 (the pre-April 1, 2009 *Code of Professional Responsibility* Rule, dealing with conflict of interest and simultaneous representation), for representing both a buyer and sellers in the sale of a motel. ( *In re Rogoff,* 31 AD3d 111 [2006] ). The *Rogoff* Court, at 112, found that the attorney, "failed to make appropriate disclosures to either the sellers or the buyer concerning dual representation." Further, the Court, at 113, censured the attorney, after it considered the matters submitted by respondent in mitigation, including:

that respondent undertook the dual representation at the insistence of the buyer, had no financial interest in the transaction and charged the sellers and the buyer one half of his usual fee. Additionally,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op. 50819(U)

**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 27 Misc.3d 1220(A), 2010 WL 1856016 (N.Y.Sup.))**

we note that respondent cooperated with the Grievance Committee and has expressed remorse for his misconduct.

### Cancelling of notice of pendency

The dismissal with prejudice of the instant foreclosure action requires the cancellation of the notice of pendency. CPLR § 6501 provides that the filing of a notice of pendency against a property is to give constructive notice to any purchaser of real property or encumbrancer against real property of an action that "would affect the title to, or the possession, use or enjoyment of real property, except in a summary proceeding brought to recover the possession of real property." The Court of Appeals, in 5308 *Realty Corp. v. O & Y Equity Corp.* (64 N.Y.2d 313, 319 [1984] ), commented that "[t]he purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of whether a purchaser had any notice of the pending suit," and, at 320, that "the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review."

**\*5** CPLR § 6514(a) provides for the mandatory cancellation of a notice of pendency by:

***The Court, upon motion*** of any person aggrieved and upon such otice as it may require, ***shall direct any county clerk to cancel a notice of pendency,*** if service of a summons has not been completed within the time limited by section 6512; or ***if the action has been*** settled, discontinued *or **abated;*** or if the time to appeal from a final judgment against the plaintiff has expired; or if enforcement of a final judgment against the plaintiff has not been stayed pursuant to section 551. [*emphasis added* ]

The plain meaning of the word "abated," as used in CPLR § 6514(a) is the ending of an action. "Abatement" is defined (Black's Law Dictionary 3 [7th ed 1999] ) as "the act of eliminating or nullifying." "An action which has been abated is dead, and any further enforcement of the cause of action requires the bringing of a new action, provided that a cause of action remains (2A Carmody-Wait 2d § 11.1)." ( *Nastasi v. Natassi,* 26 AD3d 32, 40 [2d Dept 2005] ). Further, *Nastasi* at 36, held that the "[c]ancellation of a notice of pendency can be granted in the exercise of the inherent power of the court where its filing fails to comply with CPLR § 6501 (*see 5303 Realty Corp. v. O & Y Equity Corp., supra* at 320-321; *Rose v. Montt Assets,* 250 A.D.2d 451, 451-452 [1d Dept 1998]; Siegel, N.Y. Prac § 336 [4th ed] )." Thus, the dismissal of the instant complaint must result in the mandatory cancellation of U.S. BANK's notice of pendency against the property "in the exercise of the inherent power of the court."

### Conclusion

Accordingly, it is

ORDERED, that the motion of plaintiff, U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR SG MORTGAGE SECURITIES ASSET BACKED CERTIFICATES, SERIES 2006-FRE2, for service of a supplemental summons by publication upon defendant ARRIANA EMMANUEL and related relief, in the instant mortgage foreclosure action for the premises located at 1388 Lincoln Place, Brooklyn, New York (Block 1391, Lot 13, County of Kings) is denied with prejudice; and it is further

ORDERED, that the instant action, Index Number 19271/09, is dismissed with prejudice; and it is further

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op. 50819(U)

**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 27 Misc.3d 1220(A), 2010 WL 1856016 (N.Y.Sup.))**

ORDERED that the Notice of Pendency in this action, filed with the Kings County Clerk on July 30, 2009, by plaintiff, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SG MORTGAGE SECURITIES ASSET BACKED CERTIFICATES, SERIES 2006-FRE2, to foreclose a mortgage for real property located at 1388 Lincoln Place, Brooklyn New York (Block 1391, Lot 13, County of Kings), is cancelled.

This constitutes the Decision and Order of the Court.

N.Y.Sup.,2010.
U.S. Bank, N.A. v. Emmanuel
27 Misc.3d 1220(A), 910 N.Y.S.2d 766, 2010 WL 1856016 (N.Y.Sup.), 2010 N.Y. Slip Op. 50819(U)

---

Judges and Attorneys(Back to top)

Judges

Judges

• **Schack, Hon. Arthur M.**
State of New York Supreme Court, 2nd Judicial District, Civil Term
New York
Litigation History Report | Judicial Motion Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT "3"

Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-14763(ALG)

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   GILLES Y. MICHAUD & JENNIFER R. MICHAUD,

9

10          Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                June 3, 2010

19                10:31 AM

20

21   B E F O R E:

22   HON. ALLAN L. GROPPER

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2   HEARING re Motion filed by Citibank, N.A. for an order granting

3   relief from the automatic stay.

4

5   HEARING re Objection filed by the United States Trustee to

6   motion filed by Citibnk, N.A. for an order granting relief from

7   the automatic stay.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Penina Wolicki

Page 3

1

2    A P P E A R A N C E S :

3    STEVEN J. BAUM, P.C.

4          Attorney for Citibank N.A.

5          220 Northpointe Parkway

6          Suite G

7          Amherst, NY 14228

8

9    BY:    NATALIE A. GRIGG, ESQ.

10          AMY E. POLOWY, ESQ.

11

12    U.S. DEPARTMENT OF JUSTICE

13          Office of the U.S. Trustee

14          33 Whitehall St.

15          21st Floor

16          New York, NY 10004

17

18    BY:    GREG M. ZIPES, ESQ.

19

20

21

22

23

24

25

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLES X. MICHAUD & JENNIFER R. MICHAUD
Document    Page 30 of 55

Page 4

1                    P R O C E E D I N G S

2            THE COURT:  Gilles Michaud and Jennifer Michaud.  May

3       I have appearances, please?

4            MS. GRIGG:  Natalie Grigg, Steven J. Baum, P.C. on

5       behalf of Citibank, N.A.

6            MS. POLOWY:  Amy Polowy, also from Steven J. Baum,

7       P.C. on behalf of Citibank.

8            MR. ZIPES:  And Greg Zipes from the U.S. Trustee's

9       Office.

10           THE COURT:  All right.  This is a dispute over

11      evidence of assignment of a mortgage, if I recall?

12           MS. GRIGG:  Yes, Your Honor.  Citibank, N.A. has made

13      a motion for relief in the underlying Chapter 7 case, filed by

14      Gilles and Jennifer Michaud, on the grounds that there has been

15      a default in payment and that there was no equity in the

16      property.  The debtor has not submitted any opposition to the

17      underlying motion nor has the Chapter 7 trustee.  The only

18      opposition that we have received is from the U.S. Trustee's

19      Office, on the grounds that Citibank doesn't have standing and

20      that the assignment isn't valid; that there was no disclosure

21      that Ms. Elpiniki Bechakas was an attorney from Steven J. Baum,

22      P.C. who executed the assignment, and that Citibank has to

23      describe the procedures for determining the accuracy of its

24      figures.

25           In response to the U.S. Trustee's objection, we have

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLIS v. MICHAUD & JENNIFER R. MICHAUD
Document    Page 31 of 55

Page 5

1    submitted a supplemental affirmation from my office, as well as

2    an affirmation directly -- or an affidavit directly from an

3    employee, bankruptcy specialist, from Citibank.  The affidavit

4    sets forth that the note was originally executed to

5    CitiMortgage, the mortgage was initially executed, the lender

6    was CitiMortgage, and merged with the nominee for CitiMortgage.

7            THE COURT:  CitiMortgage being a subsidiary of

8    Citicorp?

9            MS. GRIGG:  And indirect subsidiary, yes.

10           THE COURT:  All right.

11           MS. GRIGG:  And --

12           THE COURT:  Part of the Citibank group of companies?

13           MS. GRIGG:  Correct, Your Honor.

14           THE COURT:  All right.

15           MS. GRIGG:  And the note was transferred from

16   CitiMortgage to Citibank in December of 2008.  As set forth in

17   the affidavit of David Thornhill, Citibank, since that time,

18   has had possession of the original note.  In having possession

19   of the original note, and being the owner and holder, it has

20   standing to bring the instant motion for relief.  And we

21   believe that we've set forth proof with the affidavit of David

22   Thornhill to establish --

23           THE COURT:  Now, I don't have that.  Has that been --

24   was that filed on the ECF system?

25           MS. GRIGG:  Yes, Your Honor.  It's attached as Exhibit

GILLIS v. MICHAUD & JENNIFER R. MICHAUD

Page 6

1    A to my supplemental affirmation.

2          THE COURT:  And when was that filed?

3          MS. GRIGG:  That was filed on May 28th.

4          THE COURT:  I don't have it.  But let me hear from Mr.

5    Zipes.  I assume you have it?

6          MR. ZIPES:  I have it, Judge, yes.

7          Judge, I have an extra copy, by the way, of the

8    response if --

9          THE COURT:  All right.  If it's necessary.

10         MR. ZIPES:  Okay.  Judge --

11         THE COURT:  What is insufficient with regard to the

12   further evidence?

13         MR. ZIPES:  Sure.

14         THE COURT:  This apparently was a mortgage originally

15   given to an affiliate of the movant, Citibank.  And MERS was a

16   nominee as it apparently is a nominee for -- am I correct,

17   virtually every mortgage -- residential mortgage in the

18   country?

19         MR. ZIPES:  Judge, let me -- let me take a step back

20   and try to describe my office's position with respect to this

21   objection.  And we have reviewed the response --

22         THE COURT:  I read your objection.

23         MR. ZIPES:  Yes.

24         THE COURT:  An apparently you have a directive from

25   Washington to take appropriate action in cases where there is

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLIS V. MICHAUD & JENNIFER R. MICHAUD
Document    Page 33 of 55

Page 7

 1    no initial evidence of assignment, which I don't question at

 2    all.

 3             MR. ZIPES:  Okay.

 4             THE COURT:  Where are we on this particular --

 5             MR. ZIPES:  Judge, where we're at is, at the very

 6    least there remain some questions regarding Citibank's --

 7             THE COURT:  Have you asked counsel those questions?

 8             MR. ZIPES:  Judge, we haven't.  We've had --

 9             THE COURT:  Well, why don't I take a brief recess.  If

10    you have questions, why don't you ask them of counsel first,

11    and then if there's an issue -- a legal issue that has to come

12    before me, it can.

13             MR. ZIPES:  That's fine, Your Honor.

14             THE COURT:  All right.  Why don't you -- if you have

15    any remaining questions, you should take it up with counsel, in

16    this case as in any case.  Is there somebody -- is there a

17    businessperson here from the bank?

18             MS. GRIGG:  No, Your Honor.  Because we submitted the

19    affidavit, we did not bring a representative in today.

20             THE COURT:  All right.  We ordinarily don't have

21    evidentiary hearings, at least at the first return date.  All

22    right.  I'll take the other case --

23             MR. ZIPES:  Which I have too.

24             THE COURT:  You're appearing on that?  Well, I'll take

25    an adjournment if you have questions.  Are we ready on --

GILLIS V. MICHAUD & JENNIFER R. MICHAUD

Page 8

```
 1              MR. DAL LAGO:  Your Honor, debtor's counsel is still

 2     making phone calls.

 3              THE COURT:  Making phone calls.  Should I take a five-

 4     minute break, and you can ask any questions if you have?

 5              MR. ZIPES:  Sure.

 6              THE COURT:  Or do you want -- under the circumstances,

 7     do you want to ask them on the record?  I'll listen to them.

 8              MR. ZIPES:  Judge, let me -- if I --

 9              THE COURT:  I don't know that this is a very efficient

10     way of proceeding.

11              MR. ZIPES:  No --

12              THE COURT:  I tell you like I tell all counsel.  If

13     you have questions, raise them.  But not necessarily before me.

14     But go ahead.  Go ahead.

15              MS. POLOWY:  -- no, Judge, let me just preface it by

16     saying that discovery has been ongoing in various cases of

17     these types by my office.  And the Steven J. Baum firm has been

18     involved.  I know Ms. Polowy and Ms. Grigg.  And we have been

19     in communication in other cases.

20              I do believe that in this case the Baum firm is

21     drawing the line, in the sense that they believe that the

22     motion as filed was sufficient.  And in that regard, we may

23     have --

24              THE COURT:  All right.

25              MR. ZIPES:  -- a basic disagreement as to --
```

GILLIS v. MICHAUD & JENNIFER R. MICHAUD

1          THE COURT:  All right.  Let us assume that the motion

2     as filed was insufficient.  What should be done at this point?

3     Should they start over again and pay another filing fee, as a

4     matter of penalty, in effect?  If there's any impropriety in

5     submitting without adequate disclosure and attorneys'

6     affidavit, under the circumstances, do we need to deal with

7     that today in this case?  I'm merely trying to deal with a

8     motion for relief from the stay that's pending before me today,

9     without an objection from either of the debtors.

10          When I get these on presentment, I always check to see

11     what the debtor has said.  Do you know?  I did not, because

12     this has come up in a very different way.  Did the debtor

13     intend to surrender this property or to retain it in the

14     debtor's initial filing?  Do you recall?

15          MR. ZIPES:  I believe his intention is to surrender

16     the property.  But this is a Chapter 7, and there's a Chapter 7

17     trustee who --

18          THE COURT:  Right, who hasn't been heard from.

19          MR. ZIPES:  My office has been in communication with

20     the Chapter --

21          THE COURT:  What is the -- all right --

22          MR. ZIPES:  -- Chapter 7 trustee.

23          THE COURT:  Now, this isn't evidence, but this is just

24     an informal hearing.  What does the Chapter 7 trustee want to

25     do?

Page 10

1          MR. ZIPES:  The Chapter --

2          THE COURT:  Do they think there's equity in this

3    property for the creditors?

4          MR. ZIPES:  -- Judge, I think the trustee is trying to

5    determine that even at this time.  He's --

6          THE COURT:  Well, one would --

7          MR. ZIPES:  -- trying --

8          THE COURT:  -- who is the trustee?

9          MR. ZIPES:  Alan Nisselson.

10          THE COURT:  Mr. Nisselson ought to speak for himself.

11    He certainly has time to appear before me in a lot of other

12    cases.

13          MR. ZIPES:  That's true, Your Honor.  And I won't try

14    to speak for him.  Judge, I think --

15          THE COURT:  Well, you can certainly -- you can try to

16    speak for him if you want to.  What do you want me to do today?

17          MR. ZIPES:  Judge, I appreciate your questions,

18    because there is a bigger issue here that doesn't necessarily

19    focus on this motion by itself.  And it --

20          THE COURT:  What is the bigger issue?

21          MR. ZIPES:  The bigger issue is one of disclosure and

22    making sure that under the Local Rule 4001, which requires

23    significant disclosure by a secured creditor when they're

24    filing these motions, that that local rule is complied with in

25    a way that when we pick up a motion, it's internally consistent

Case 10-12856-1-rel   Doc 29   Filed 01/06/11   Entered 01/06/11 12:26:08   Desc Main
GILLIS V. MICHAUD & JENNIFER R. MICHAUD
Document     Page 37 of 55

Page 11

1    and makes sense, and that all relevant facts are disclosed.

2              THE COURT:  Okay.

3              MR. ZIPES:  And I really think that that is the crux

4    of what the U.S. Trustee's concern is here.  There -- this is

5    not a big Chapter 11 case, and these motions are filed in a

6    very routine manner, Judge.  And frankly --

7              THE COURT:  We don't get that many in this court, in

8    fact.

9              MR. ZIPES:  Judge, I can --

10             THE COURT:  No, let me continue.

11             MR. ZIPES:  I'm sorry.

12             THE COURT:  And you say they're routine.  I review

13   each one personally.  I don't give it to my law clerks.  I

14   review the motion and I review the petition.  And I'm

15   particularly interested in determining, one, whether there's

16   been service on the individuals as well as the attorney.  I

17   look at it more closely when it's a pro se matter.  You are --

18   I think the Office is to be commended or at least I appreciate

19   that you ferreted out some relevant information here that

20   wouldn't be obvious in my review.

21             But I don't treat these routinely.  And I look to see

22   whether or not the debtor has stated -- because they now have

23   to state -- do they intend to retain the property or do they

24   intend to surrender it.  And in many cases -- in most cases, I

25   would say, certainly half of the cases, they indicate

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLIS V. MICHAUD & JENNIFER R. MICHAUD
Document    Page 38 of 55

Page 12

1    surrender.  In a number of the matters -- you know, may two on

2    the average, come before me, a week, at most.  And half of

3    them, at least, are second properties.  I had one in Las Vegas

4    a few days ago, or maybe yesterday, where the -- this was

5    either the debtor's pied-a-terre in Las Vegas or investment

6    property.  I suspect from looking at the petition it was

7    investment property.

8            Very few cases where the property is the residence

9    where the debtor is living at the time, at least at the time

10   they filed the petition.  Very few.  But so be it.  So I

11   don't -- I will not comment one way or another on the policy of

12   the U.S. Trustee, I'm just trying to deal with this case.  And

13   if you have questions, go ahead.  Or are we ready now on -- oh,

14   you have to appear on that case, Mr. Zipes.

15           All right.  What are your questions?  What do you want

16   to do with this case today?

17           MR. ZIPES:  Judge, I really do want to focus on this

18   case.  But routine may be a semantic argument.

19           THE COURT:  All right.

20           MR. ZIPES:  If you --

21           THE COURT:  What do you want to do with this case

22   today?

23           MR. ZIPES:  Judge, we would either ask that the motion

24   be denied with -- and it be refiled with the information that

25   we would request, or that we be entitled to conduct discovery

1    and adjourn the motion.  Or we could use that time to discuss

2    it informally as well.  But there is an issue here, statements

3    made in response, which you haven't had an opportunity to

4    review, about MERS's role in this assignment and the Baum law

5    firm's relationship to MERS, which frankly contradict

6    statements that are in the motion.

7            For example, in the response, which again, you haven't

8    had the opportunity to review, MERS is described as a

9    placeholder.  And this Court, I think, is familiar with MERS.

10           THE COURT:  Somewhat, but no expert.

11           MR. ZIPES:  MERS --

12           THE COURT:  And I don't purport to be.

13           MR. ZIPES:  -- yes, and Judge, it's a learning process

14    for everybody.  But MERS was -- is designed by the banking

15    industry to allow for an easier route towards securitizations

16    by -- mortgages are recorded under MERS's name, and then

17    there's a registry where mortgages are traded on the secondary

18    market.  And that much, I think, everybody can agree to.  But

19    MERS has taken an inconsistent position in this case and in

20    prior cases.

21           In this case, in the original motion, the papers that

22    are attached under the mortgage, if you read the mortgage

23    documents, MERS is allowed to foreclose, for example.  And if

24    you read the assignment of mortgage, MERS is assigning its

25    beneficial interest to the assignee here, which is Citibank.

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLES Y. MICHAUD & JENNIFER R. MICHAUD
Document    Page 40 of 55

Page 14

1          In the responsive papers -- MERS hasn't submitted an

2    affidavit, by the way, in the responsive papers.  But Citibank

3    is arguing that MERS is just a placeholder.  The two positions

4    aren't necessarily consistent.  MERS has, in the past, it's

5    uncontested, filed complaints, foreclosure actions, in its own

6    name.  So the position they're taking here is not necessarily

7    consistent with what MERS has taken in the past.

8          And my office -- if MERS is the assignor here, Judge,

9    we want to know -- it's now clear that there is an attorney

10   from the Baum firm that signed the assignment -- what is her

11   authority?  Who told her to do this?  Was it someone at MERS or

12   was it someone at Citibank?  These are questions that we don't

13   know the answers to at this time.  The response, I can tell

14   you, did not -- they can speak for themselves, but the response

15   didn't make that any clearer, who directed her to sign these

16   papers.

17         Baum is also arguing that it has no attorney-client

18   relationship with MERS.  But it's also attaching papers where

19   it frankly does have a relationship with MERS.  So is the Baum

20   law firm on both sides of this transaction?  And Judge, in

21   Chapter 11 context, if there's a motion --

22         THE COURT:  This has got nothing to do with Chapter

23   11.

24         MR. ZIPES:  -- it's got absolutely nothing to do with

25   Chapter 11.  But if there's a party in interest behind the

GILLIS V. MICHAUD & JENNIFER R. MICHAUD

Page 15

1   scenes for a sale, for example, it's relevant to the motion to

2   at least know what that is.  It may not affect the ultimate

3   outcome of the motion, Judge, but it's relevant to all the

4   parties that full disclosure be made.  Certainly the spirit of

5   Local Rule 4001, is to have full disclosure in these motions.

6         And it's -- when I use the word "routine", Judge, it

7   is perhaps a semantical argument, but there are -- there was a

8   motion filed that night, on Friday, but -- the response was

9   filed in Friday before Judge Morris, with the same basic

10  scenarios, an assignment of mortgage signed by Ms. Bechakas of

11  the -- and I might be pronouncing that wrong, and I

12  apologize -- but signed by her, same motion to vacate the

13  automatic stay; same lack of disclosure in that motion.  And

14  it's an issue that transcends this case.

15        My office would obviously prefer to work something

16  out.  But there does seem to be a basic disagreement of what

17  disclosure is necessary, and that --

18        THE COURT:  All right.  So what would you like me to

19  do today?

20        MR. ZIPES:  So today, as I said, I think -- and I

21  appreciate -- it's not my office's intention to pay the fifty-

22  dollar -- whatever the filing fee is.  That's really not what

23  we're --

24        THE COURT:  I don't think that's the issue.

25        MR. ZIPES:  -- it's not the issue.  Although, the

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLIS V. MICHAUD & JENNIFER R. MICHAUD
Document    Page 42 of 55

Page 16

1    shortcuts here are, in our opinion -- on the other side, are to

2    save money.  But that's not our issue.  We'd either like the

3    motion to be denied -- and we're not saying that because we

4    want them to pay that filing fee.  We want the further

5    disclosure.  We want disclosure if there's an assignment by

6    someone of the Baum firm, we want that disclosed in the motion.

7    If MERS is more than just a nominee without a nominee without a

8    beneficial interest, that needs to be explained in the motion.

9         I don't think it's a complicated -- necessarily a

10   complicated motion.  It just requires a little bit more time

11   and energy on the part of the parties that are filing these

12   motions.

13        But, Judge, there is an issue here, if the assignment

14   of mortgage is -- if the note was separate from the mortgage,

15   for example; if the holder of the mortgage is different from

16   the holder of the note, there are issues for a Chapter 7

17   trustee to look at in that situation.  And that is one of the

18   reasons why Alan Nisselson is taking a wait-and-see approach

19   with this.  But there are legal issues --

20        THE COURT:  Well, I think you can tell Mr. Nisselson

21   that if he's taking a wait-and-see, it would behoove him to

22   sign -- to file a piece of paper saying that he wants to review

23   the situation more fully.

24        MR. ZIPES:  And --

25        THE COURT:  And if that's his position, obviously, if

Case 10-12856-1-rel   Doc 29   Filed 01/06/11   Entered 01/06/11 12:26:08   Desc Main
GILLIS V. MICHAUD & JENNIFER R. MICHAUD
Document     Page 43 of 55

Page 17

1   the mortgage wasn't filed properly, there would be a real issue

2   here for the Chapter 7 trustee.  But I don't hear that.

3          MR. ZIPES:  Judge, I'd just note that there's a

4   basic -- if you just look at the papers as someone from --

5   there's a basic contradiction in the position of MERS.  On one

6   hand it's an assignment by MERS.  On the other hand, MERS has

7   no interest in it.  And that may be ultimately explainable, but

8   it requires a little bit more of an explanation, with all the

9   papers that say MERS has this role and that role and MERS's

10  current position, which is -- and again, I note, not backed by

11  an affidavit by anybody at MERS in the papers.

12         THE COURT:  All right.

13         MR. ZIPES:  So, Judge, I don't want to -- on the one

14  hand, I want to answer your questions --

15         THE COURT:  You answered my question.  Thank you.

16         MR. ZIPES:  Okay.

17         THE COURT:  Let me hear from --

18         MS. GRIGG:  Thank you, Your Honor.

19         THE COURT:  -- the movant.

20         MS. GRIGG:  Your Honor, the issue of the MERS

21  assignment really isn't relevant to this motion.  Yes, there

22  was an assignment from MERS to Citibank attached to the motion.

23  But it's not that assignment that gives Citibank its standing

24  to bring this motion.  MERS, as listed in the original

25  mortgage, was just the mortgagee of record, that's it.  It

Case 10-12856-1-rel    Doc 29    Filed 01/06/11    Entered 01/06/11 12:26:08    Desc Main
GILLIS V. MICHAUD & JENNIFER R. MICHAUD
Document      Page 44 of 55

Page 18

 1    didn't have a beneficial interest --

 2             THE COURT:  But didn't you include --

 3             MS. GRIGG:  -- an equitable interest --

 4             THE COURT:  -- in your original papers an assignment

 5    by MERS?

 6             MS. GRIGG:  For purposes -- an assignment was

 7    included, and the assignment was executed strictly to put the

 8    world on notice that this transfer had occurred.  Citibank's

 9    standing comes from the fact that it has had possession of the

10    note since December of 2008.  And it is the current owner and

11    holder of that note.

12             THE COURT:  And that's in your reply papers?

13             MS. GRIGG:  Yes, Your Honor.

14             THE COURT:  All right.

15             MS. GRIGG:  It's set forth in the reply.  It's set

16    forth in David Thornhill's affidavit, when they took possession

17    in December of 2008, that they've had possession since then.

18    It's strictly -- once relief is granted and the foreclosure

19    needs to proceeds, Citibank needs to foreclose in its own name.

20    So for purposes of being able to foreclose, that assignment has

21    to be out there, because it has to just finish connecting the

22    chain of title in the eyes of the public, basically.

23             But for purposes of this motion, this MERS assignment

24    does not undermine Citi's standing.  It's not what gives

25    Citibank standing to come before this Court.  What gives

GILLIS V. MICHAUD & JENNIFER R. MICHAUD

Page 19

1    Citibank standing is the fact that it is the owner and holder

2    of the note in this case, and has been since 2008.

3           With respect to disclosure that Mr. Zipes bring up,

4    and I understand Your Honor doesn't have a copy of our

5    supplemental papers, but there's grounds set forth in there

6    setting forth that there is an assigning agreement between

7    MERS, CitiMortgage and Steven J. Baum, that gives Ms. Bechakas

8    authority to sign assignments on behalf of MERS.  It is very

9    specific language as to what she is entitled to do, and that is

10   to execute assignments to future holders, basically.

11          Ms. Becha -- any disclosure, however is not -- to the

12   Court, we believe is not necessary.  Disclosure was made to the

13   proper parties.  MERS knows that Ms. Bechakas is going to

14   assign an assignment.  CitiMortgage knew they were going to by

15   executing this assigning agreement between the parties.  Who

16   instructed Ms. Bechakas is completely irrelevant to this

17   underlying motion, again, because the assignment is nothing

18   more than to put the world on notice that Citibank is the

19   actual holder at this point.

20          And there have been many other cases, Your Honor,

21   where an affidavit from a client has been sufficient to

22   establish its standing and to overcome any burden or any

23   issues.  You know --

24          THE COURT:  I don't think the issue is lack of a

25   witness with knowledge to come in and testify today.  I hear

GILLIS V. MICHAUD & JENNIFER R. MICHAUD

Page 20

```
 1   the issue being the initial papers having been insufficient.

 2   I'm not sure that it is the U.S. Trustee's position that the

 3   papers as supplemented are insufficient to show standing in

 4   this case, but that the initial filing was insufficient; and

 5   that in cases such as this, not necessarily to call them

 6   routine, but in cases like this, it's extremely important that

 7   the initial papers be accurate and sufficient.  And that's why

 8   we have specific rules that movants have to follow.

 9         The reason is is that we do get multiple motions of

10   this nature.  They are reviewed, but they only get a certain

11   amount of review; and that as a matter of policy, it is

12   extremely important that the initial papers be sufficient,

13   fully vetted, and that full disclosure be made.  And I think

14   the U.S. Trustee still is uncertain as to MERS's position in

15   these types of mortgages and these types of proceedings, and in

16   the position of the lawyer in your firm, who purports to be a

17   signatory for MERS, and is that appropriate under all the

18   circumstances.  I think that's what the issue is.

19         I don't -- and if anybody feels differently -- I don't

20   think the issue is lack of a witness to come in today in this

21   case -- that certainly could be an issue in another case.  But

22   in this case it's the insufficiency of the original papers.

23         MS. GRIGG:  I would submit, Your Honor, that the

24   original papers were sufficient and in compliance with the

25   local rules.  It identified Citibank as the holder of the note
```

Page 21

1    and mortgage and the client aff -- I say client affidavit, but

2    for all intents and purposes, the worksheets that were

3    submitted in support of the affidavit or in support of the

4    motion, was signed by David Thornhill as a representative of

5    Citibank, and set forth all of the amounts due and everything

6    that's required by the local rules.

7           There's nothing further required by the local rules

8    that's missing from the motion.  That affidavit, in and of

9    itself, saying that he's a representative of Citibank, that

10   this is what the records reflect, this is what it reflects

11   they're due for, is sufficient to establish standing.  Citibank

12   is the holder of this note and mortgage.  That's set forth.

13          Mr. Zipes may not be happy with the fact that there's

14   a MERS assignment, but ultimately, like I said, the MERS

15   assignment is just strictly to put everyone on notice that the

16   transfer took place.  The transfer took place back in December

17   2008.  Mr. Zipes had questions regarding how --

18          THE COURT:  You're telling me there never was a

19   transfer to MERS and therefore there wasn't --

20          MS. GRIGG:  MERS only is just a nominee of record.

21   That's all.  They never had physical possession of the note.

22   It was -- CitiMortgage originally had physical position, and

23   that's what was transferred to Citibank.  And between our

24   original motion papers and the supplemental, we believe we have

25   established that this motion is sufficient, Citibank has

Page 22

1    standing, and it is entitled to relief in this case.

2          THE COURT:  Thank you.

3          MR. ZIPES:  Judge, just -- Judge, you can see that

4    there is not a meeting of minds here with respect to the

5    original motion.  And the original motion clearly, in paragraph

6    1 of the motion, is relying on the assignment of mortgage as a

7    basis.  Standing is not mentioned in the original motion.  But

8    clearly in the first paragraph, "Secured creditor is a holder

9    by assignment of a mortgage."  And that assignment is MERS as

10   nominee to Citibank.

11         We're hearing today -- and this is really what's in

12   the response as well -- that MERS has no interest in this,

13   notwithstanding that there's an assignment of mortgage, Judge.

14   So I -- when I said this is a bigger issue than this case,

15   Judge, it is true that what you have before you is a motion to

16   vacate the automatic stay.  It may be that my office will have

17   to take further action and bring this in a different way before

18   either this Court or some other court.  But I agree with the

19   Court's sentiment that if we can come to an understanding of

20   what these motions should have in them, then that might be the

21   best way of doing it.

22         My office is prepared to move with discovery and take

23   what appropriate actions we deem as appropriate, before this or

24   any other court.  There is a motion before Judge Morris, as I

25   said, that was just filed Friday night, which has the same

GILLIS v. MICHAUD & JENNIFER R. MICHAUD

Page 23

1    assignment of mortgage.  Judge Morris wouldn't necessarily know

2    that that's an employee of the Baum law firm either.  And it is

3    a matter of disclosure, Judge, that that is an important issue.

4    And disclosure is important because we need to know that

5    Citibank has standing.

6           If Citibank has standing because it holds the note,

7    Judge, and the mortgage -- I didn't hear Ms. Grigg say the

8    mortgage; she kept talking about the note.  But assuming that

9    Citibank's standing is because of the mortgage, and that's the

10   reason, that's just not in the motion, Judge.  In fact, the

11   motion clearly is relying on the assignment, which we just

12   heard is made for public relations purposes more than anything

13   else, and that MERS may have executed this assignment of

14   mortgage, but that MERS really doesn't have an interest in this

15   case.

16          Judge, again, if it's Joe Bank, and that bank had the

17   mortgage and note from the beginning, there's a motion to

18   vacate the automatic stay, there's no intermediary, those --

19   when you attach the note and mortgage, and you have an

20   affidavit from someone, that is sort of a clear case scenario.

21   This is not a clear-cut case, Judge.  We would submit that it

22   requires a little bit more of an explanation.  The facts are

23   garbled even today.

24          But at the very least, if we turn our attention to the

25   original motion, what you're hearing today from the Baum law

Page 24

1   firm, is different from what's in the motion.  The assignment

2   of mortgage, if it is a PR -- created for PR purposes, so that

3   when people are flipping through these motions they see an

4   assignment of mortgage and they're now satisfied of standing,

5   that probably is not an appropriate use of the assignment of

6   mortgage.  But what MERS's role is in here is not entirely

7   clear.  And if Ms. Bechakas didn't have authority from someone

8   to sign this assignment of mortgage and needed that authority

9   from someone to sign that assignment of mortgage, then maybe

10  this assignment was not effective, Judge.

11       Again, my office is not saying that the assignment

12  wasn't effective or that Citibank is --

13       THE COURT:  Thank you.  All right.  It seems -- yes?

14       MS. GRIGG:  I just wanted to add one point of

15  clarification, Your Honor.  With respect to Mr. Zipes' note

16  about the holder by assignment language in our paragraph 1.  We

17  include that language in our motions merely to disclose to the

18  Court that Citibank or whatever secured creditor we're moving

19  in the name of, was not the original holder, basically saying

20  that there is a chain of title, and we've now completed chain

21  of title.

22       Since the filing of this motion, our office has

23  actually amended its procedures and is no longer including the

24  "by assignment" language, because it does seem to be lending to

25  some confusion.

GILLIS V. MICHAUD & JENNIFER R. MICHAUD

Page 25

1          THE COURT:  Well, is Ms. Bechakas a lawyer with your

2    firm?

3          MS. GRIGG:  She is an attorney with our law firm, yes,

4    Your Honor.

5          THE COURT:  And she's still signing for MERS as

6    nominee for the mortgagee?

7          MS. GRIGG:  I don't know how recently she's been

8    signing up to.  I can only speak to my involvement in this

9    motion.

10          THE COURT:  In this case.  All right.

11          MS. GRIGG:  But, Your Honor, at this point, if Your

12    Honor feels inclined to deny the motion, we would be more than

13    willing to work with the Trustee to refile the motion --

14          THE COURT:  Well, I think it's a good idea --

15          MS. GRIGG:  -- to put whatever disclosure --

16          THE COURT:  -- for you to work with the Trustee to see

17    how this can be resolved.  It seems to me that the appropriate

18    action is -- in this case, to deny the motion without prejudice

19    to renewal.  I certainly would have -- to the extent the

20    Clerk's office will allow me to, give you the right to refile

21    without paying the filing fee again, I would certainly

22    authorize that.  But frankly, I don't know if I have the right

23    to authorize -- I have authorized parties to refile Chapter 7

24    petitions without paying the filing fee, and that's worked.

25    But I don't think the issue here is the filing fee.

Page 26

1           If there are any other issues that need to be attended

2    to, the U.S. Trustee should pursue them, including such

3    discovery as may be called for.  But I think the U.S. Trustee

4    does have a point, because I'm looking at the assignment of

5    mortgage which was part of the original papers, and the

6    assignment is from CitiMortgage Inc., in effect, to Citibank

7    N.A., which would seem to me to be potentially a possible

8    assignment, although within a corporate group.  But the

9    original lender is said to be Mortgage Electronic Registration

10   Systems, Inc., or MERS, as nominee for CitiMortgage Inc., its

11   successors and assigns.  And the MERS signature as nominee for

12   CitiMortgage is that of Ms. Bechakas.

13          And it does to seem to me, some possible issues are

14   raised by MERS appearing as -- merely as nominee, with a

15   signature of the lawyer for the movant, in this case, Citibank,

16   N.A.  And it would seem to me, if MERS is appearing merely as a

17   nominee, that the assignor ought to be -- signatory ought to be

18   a signatory of CitiMortgage, although I'm not certain.

19          I think enough issues have been raised that I'll deny

20   the motion without prejudice to renewal, if possible, without

21   having the pay the filing fee.  And perhaps the issues raised

22   by this -- or issues raised by the U.S. Trustee can be

23   separated from relief from the stay in this case, so that if

24   the next set of papers were adequate, perhaps they could be

25   reviewed by the U.S. Trustee and we don't have to delay.

GILLIS Y. MICHAUD & JENNIFER R. MICHAUD

Page 27

1          Because it appears that the individuals have no

2    objection here, and if Mr. Nisselson wants to be heard, he

3    should be brought into the loop, Mr. Zipes, and he should be

4    heard.  He can't just simply sit back.  The movant is entitled

5    to relief from the stay, assuming there's no objection.

6          All right?

7          MR. ZIPES:  Understood.

8          THE COURT:  Thank you.

9          MR. ZIPES:  Thank you, Judge.

10          MS. GRIGG:  Thank you, Your Honor.

11          THE COURT:  If the parties believe an order should be

12    entered -- an appropriate order should be entered, they can

13    discuss the same -- either party can settle an order or submit

14    an agreed order.  Thank you.

15          MS. GRIGG:  Thank you, Your Honor.

16          MR. ZIPES:  Thank you.

17        (Proceedings concluded at 11:05 a.m.)

18

19

20

21

22

23

24

25

Page 28

1

2                              I N D E X

3

4                               RULINGS

5                                      Page      Line

6  Motion filed by Citibank   25        18

7  for order granting

8  relief from stay is

9  denied without prejudice

10  to renewal

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4     I, Penina Wolicki, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7     _____

8     Penina Wolicki

9

10    Veritext

11    200 Old Country Road

12    Suite 580

13    Mineola, NY 11501

14

15    Date:  June 8, 2010

16

17

18

19

20

21

22

23

24

25