UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
=====================================x

IN RE:  GEORGE S. BEVINS                    Case No.:  10-12856
                                            Chapter 13
                Debtor

Address:  100 Starks Knob Road
          Schuylerville, NY 12871

Last Four Digits of Debtor's SSN: xxx-xx-3595
=====================================x

**DEUTSCHE BANK TRUST COMPANY AMERCIAS AS TRUSTEE FOR THE MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-QS18 TRUST BY ITS SERVICER AND ATTORNEY IN FACT GMAC MORTGAGE LLC'S RESPONSE TO DEBTORS' OBJECTION TO THE PROOF OF CLAIM OF GMAC MORTGAGE LLC**

Deutsche Bank Trust Company Americas as Trustee for the Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS18 Trust ("Deutsche Bank") by its servicer and attorney-in-fact GMAC Mortgage LLC, ("GMACM") (together, "Secured Creditor"), by its attorneys, Hinshaw & Culbertson LLP, respectfully submits this Response along with the annexed affidavits and exhibits of Judy Farber ("Farber Aff."), Document Custodian of GMACM to George S. Bevins' ("Debtor") Objection to GMACM's Proof of Claim #4, dated August 25, 2010 ("Bevins' Objection") (Docket No. 22)and the Response of Tracy Hope Davis, United States Trustee for Region 2 ("Response of U.S. Trustee") (Docket No. 29).

**PRELIMINARY STATEMENT**

Debtor acknowledges his obligations under the note and mortgage, and even provides for payments towards such obligations in his Chapter 13 Plan, but seeks to escape such obligations based upon alleged standing issues.  In the Objection, Debtor seeks to expunge the Secured Creditor's Proof of Claim (POC) raising various arguments that go to Deutsche Bank's standing

130049976v1 0919091 55921

to enforce the claim and GMACM's right to file the claim.[1] Because the information provided in this response and the accompanying affidavit, and the exhibits attached thereto, fully address Debtor's Objection to the POC and the concerns raised in the Response of U.S. Trustee, and clearly establish that Deutsche Bank is the holder of this claim with standing to enforce it, Debtor's Objection should be disallowed.

## STATEMENT OF FACTS

### A. The Underlying Loan

On October 27, 2005, Debtor executed a fixed rate note (the "Note") whereby Debtor promised to pay the lender, Homecomings Financial LLC (f/k/a Homecomings Financial Network, Inc.) ("Homecomings") the sum of $107,696.00 together with interest pursuant to the terms of the Note. A copy of the original endorsed Note is attached to the Farber Aff. as Exhibit A. The Farber Aff. is attached hereto as Exhibit 1. On the same day, to secure to Homecomings, its successors and assigns the repayment of indebtedness evidenced by the Note, Debtor executed a Mortgage (the "Mortgage") in favor of MERS and its successors in interest solely as nominee for Homecomings and Homecomings' successors in interest, whereby he granted a mortgage on residential property located at 178 Route 4N, Northumberland, New York 12871 a/k/a 100 Starks Knob Road, Schuylerville, New York 12871 (the "Property"). A copy of the original Mortgage is attached to the Farber Aff. as Exhibit B. The Note and Mortgage are referred to collectively herein as the "Bevins Loan." Since May 1, 2007, the Bevins Loan has been serviced by GMACM. *See* Farber Aff at ¶ 7. Prior to his bankruptcy filing, Debtor made principal and

---

[1] Debtor further objects with respect to the Assignment of Mortgage executed by an attorney employed by Steven J. Baum, P.C. in her capacity as an Assistant Secretary and Vice President of MERS with limited signing authority. Hinshaw & Culbertson LLP does not represent the interests of Steven J. Baum, P.C. and it is our understanding that Steven J. Baum, P.C. has retained separate counsel and has filed its own response which addresses the issues raised therein.

2

interest payments on the Bevins Loan from November 27, 2006 to September 21, 2009. The Debtor began making post-petition payments on August 26, 2010 in the amount of $734.68 and continued to make payments until October 25, 2010.

### B.     MERS as Nominee for Homecomings and Its Successors and Assigns

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. were developed by the real estate industry to serve as the mortgagee of record and operate an electronic registration system for tracking interests in mortgage loans. The New York courts have noted the unique background and role of MERS. As the New York State Court of Appeals explained in *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006), the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. Members of the MERS® System also include entities such as insurance companies, title companies and banks. Specifically, the MERS® System tracks the transfers of mortgage servicing rights and beneficial ownership interests in mortgage loans on behalf of MERS members.

The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to sell home mortgage loans without having to record each transfer in the County Clerk's office because MERS remains the mortgagee by contractual agreement between MERS and the lenders. *Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268. MERS holds legal title to a security interest under a deed of trust or a mortgage for the original lender, and its successors and assigns, and tracks changes in those mortgage interests in order to eliminate the need for frequent, recorded assignments of subsequent transfers. *Mortgage Electronic Registration Systems, Inc. v. Bellistri*, 2010 WL 2720802 *6, *8 (E.D. Mo. July 1, 2010).

3

At the origination of the loan by a lender who is a MERS member, the lender takes possession of the note (and becomes the holder of the note), and the borrower and lender then designate MERS (as the lender's nominee) to serve as the mortgagee or beneficiary of record. The lender's secured interests are thus held by MERS. *Bellistri*, 2010 WL 2720802 at * 7. MERS' Rules, which are incorporated into all MERS' agreements with its members, provide that members "shall cause Mortgage Electronic Registration System, Inc. to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System." *See* Bergman, Lender and Servicer Alert (Aug. 2004) (emphasis added).

Accordingly, when a MERS' member originates a loan, the original lender and the borrower contractually agree in the mortgage that MERS will be the mortgagee and will serve - as nominee for the lender and its successors and assigns. *Bellistri*, 2010 WL 2720802 at * 7. In the event of a default on the loan, MERS as the beneficiary or mortgagee, is authorized to foreclose on the home. *Id*. After the borrower signs the mortgage agreement, it is recorded in the public, local land records with MERS as the named beneficiary or mortgagee. *Id*.

### C.  Assignment To The Trust

Prior to the commencement of this proceeding, the original lender, Homecomings, assigned the Bevins Loan to Residential Funding Corporation who in turn assigned the Bevins Loan to Deutsche Bank Trust Company Americas as Trustee for the Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS18 Trust pursuant to the Pooling and Servicing Agreement dated, December 1, 2006, by and between Residential Accredit Loans, Inc as Depositor ("RALI"), Residential Funding Company, LLC as Master Servicer ("RFC") and Deutsche Bank as Trustee (the "PSA"). *See* Farber Aff. at ¶ 5. These assignments were in conformity with the procedures set forth in the PSA. *See* §2.01(a) and (b) of the PSA, attached

4

to the Farber Aff. at Exhibit 6. As reflected through the endorsements on the note, Homecomings endorsed the Note to RFC who in turn endorsed the Note to Deustche Bank. *See* Farber Aff. at ¶ 6. The Bevins Loan is properly listed in the Schedule of Mortgages attached to the PSA and was properly included in the Trust on or before the closing date.

On August 31, 2009, MERS, acting as nominee for Homecomings and its successors in interest, pursuant to the terms of the Mortgage, caused an assignment of mortgage to be executed in order to document in the land records of the New York City Department of Finance that the ownership of the Bevins' Loan had been previously assigned to Deutsche Bank. Specifically, the assignment was executed on August 31, 2009 by Elpiniki Bechakas, Esq., pursuant to a Signing Agreement and Corporate Resolution.[2]  *See* Signing Agreement and Corporate Resolution attached to Baum Memorandum of Law (Docket No. 28) as Exhibit A.

### D.    Debtor's Bankruptcy Proceeding and the Proof Of Claim

Debtor commenced this Chapter 13 bankruptcy proceeding by filing a Voluntary Petition (the "Petition") dated July 30, 2010. (Docket No. 1). Schedule D to the Petition – Creditors Holding Secured Claims -- lists the loan servicer, GMACM, as creditor. Debtor acknowledges a first mortgage with an outstanding balance of $111,896.00; Debtor did not indicate that the claim was "contingent," "unliquidated" or "disputed" in his original Petition. On November 17, 2010, GMACM, as servicer for the Bevins Loan, filed the POC attaching a summary of the claim, copies of the Note and Mortgage, the Assignment of Mortgage and itemized statements of legal expenses and fees incurred in connection with attempts to protect the Secured Creditor's interest in the Property. The total debt set forth in the POC is $122,420.13 which includes pre-petition

---

[2] The Signing Agreement and Corporate Resolution granted Ms. Bechakas – as well as several other attorneys in several other law firms – limited signing authority as a convenience to MERS and its members to allow for assignments to be completed expeditiously.

5

arrears in the amount $18,964.93. Approximately two days after the POC was filed, Debtor amended his Schedule D to list the previously acknowledged undisputed debt to GMACM as "disputed." (Docket No. 25).

## ARGUMENT

### DEBTORS' OBJECTION SHOULD BE DISALLOWED BECAUSE THE ASSIGNMENT IS PROPER GIVING SECURED CREDITOR STANDING TO FILE PROOF OF CLAIM

**I.   Standard**

A proof of claim that is executed and filed in accordance with Bankruptcy Rule 3001(f) constitutes prima facie evidence of the validity and amount of the claim. Debtor is incorrect in suggesting that the mere filing of an objection shifts the burden to creditor to demonstrate proof on standing. Instead, the Debtor's objection to a proof of claim must be supported by sufficient evidence to rebut the claimant's prima facie case. In re Castaldo 2006 WL 3531459 (Bkrtcy. S.D.N.Y). To rebut the presumption of the claimant's *prima facie* case, the objecting party -- here, the Debtor -- is required to produce "sufficient evidence to negate one or more of the sworn facts in the proof of claim. In re Martinez, 409 B.R. 35 (S.D.N.Y. 2009).

    **A.   The Proof Of Claim Is Not Defective -- GMACM Is A Secured Creditor**

The Bankruptcy Code and Federal Rule of Civil Procedure 17 each have liberal standing provisions designed to allow a party to appear as long as it has a direct stake in the litigation. *In re Minbatiwalla*, 424 B.R. 104, 109 (S.D.N.Y. 2010) (J. Glenn). A servicer of a mortgage "is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as servicer." *See Id*. (quoting *In re Conde-Dedonato*, 391 B.R. 247, 250 (E.D.N.Y. 2008)).

In the mortgage context, this court has held that the "creditor may initially attach only a summary of its claim, containing the debtor's name, account number, the pre-petition account

6

balance, interest rate, and a breakdown of interest charges, finance charges and other fees that make up the balance of the debt." *Id*. at 117. GMACM satisfied these requirements by including with the POC, a copy of the Mortgage, a copy of the Note, and an itemization of the claim and a breakdown of legal fees incurred. In error, a copy of the endorsements which are on the back of the last page of the Note, was not included with the POC.

### B.     Inclusion Of The Bevins Loan In Debtor's Schedules Should Not Be Ignored

The court should not ignore Debtor's scheduling of a "strikingly" similar claim to that asserted by Deutsche Bank and GMAC in the POC. *See, e.g.*, *In re Minbatiwalla*, 424 B.R. 104, 118 (Bkrtcy. S.D.N.Y. 2010) (the court "must balance 'the debtor's right to be able to verify that the claimant is the owner [of the debt] and the claimant's right not to be harassed with *pro forma* documentation objections having no underlying basis") (quoting *In re Kincaid*, 388 B.R. 610, 616 n.7 (E.D.Pa. 2008); *In re Parrish*, 326 B.R. 708, 721-22 (N.D.Ohio 2005) (allowing creditor additional time to file an amended proof of claim where "debtor acknowledges that he owes money to some entity and there presumably is still a lien on the real estate at issue"). Moreover, it is significant that despite giving notice to his creditors, neither Homecomings as originator of the loan nor any other party has filed a proof of claim attempting to enforce the Bevins Loan. *See In re Leverett*, 378 B.R. 793, 801 (E.D.Texas 2007) (in credit card context, finding the fact that the original creditor did not file a proof of claim after notice of same a factor in inferring that assignee of the original creditor holds the claim).

Moreover, that Debtor subsequently amended his Schedule D to list previously undisputed claims as disputed "does not negate the prima facie validity of the claims since original schedules constitute an admission that the debts are owed." *See In re Cluff*, 313 B.R. 323, 340 (Bankr. D. Utah 2004) (debtor's attempt to amend schedules was "disingenuous" and

7

"smack[ed] of bad faith"). On Schedule D of the Petition, Debtor admits that the Property is subject to a secured first lien in the amount of $111,896 and lists the creditor as GMACM. *See* Schedules A and D, Exs. D and C, respectively.[3] The POC, attaching a copy of the Mortgage on the Property, sets forth a claim of $122,420.13 (which includes pre-petition arrears of $18,964.93). Indeed, the secured claim admitted by the Debtor is slightly higher than the debt claimed in the POC. *See* POC, Objection, Exhibit 1.

Given that Deutsche Bank has established its ownership of this claim, and Debtor had acknowledged the secured claim prior to amending his Schedule D, the POC should be allowed.

### C.     The Note and Mortgage Were Properly Negotiated and Assigned

As an initial matter, the Mortgage and Note were securitized and deposited into the Trust on or before the closing date. Therefore, pursuant to the PSA, the Mortgage and Note were duly assigned, negotiated and properly made part of the Trust. The Note contains all the necessary endorsements which support Deutsche Bank's right to enforce the POC.

Although, Debtor acknowledged GMACM as a secured creditor in his original Schedule D, Debtor now claims that GMACM is not a secured creditor and neither GMACM nor Deutsche Bank has standing to enforce the POC. However, as an assignee of a note and mortgage, such as Deutsche Bank, has standing to file a proof of claim. *See In re Minbatiwalla*, 424 B.R. at 109. In response to Debtor's challenge to Deutsche Bank's standing, an affidavit attesting to the assignment of the note and mortgage to Deutsche Bank is submitted with this Response. *Id.* (an assignee is properly considered a creditor based on a affidavit attesting to the assignment).

As set forth in the Farber Aff., Deutsche Bank, in its capacity as Trustee of the Trust under the PSA has been in continuous possession of both the endorsed Note and the Mortgage,

---

[3] On Schedule A, Debtor acknowledges a secured claim in the amount of $141,059.00. *See* Schedule A, Docket #1.

8

except from November 24, 2010 to November 30, 2010, when the file was released to ACS to permit GMACM to copy the original of the Note and Mortgage. *See* Farber Aff., at ¶ 8. It is well-established in New York that an assignment can be effected solely by transfer of the relevant note and mortgage by the assignor to the assignee with the intention that all ownership interests are thereby transferred. *See Deutsche Bank Nat'l Trust Co. v. McRae*, 27 Misc.3d 247, 894 N.Y.S.2d 720 (Sup.Ct. Alleghany Cty. 2010); *Minbatiwalla,* 424 B.R. at 109 (citing N.Y. Real Property Law §244: "a grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery"). Accordingly, once Deutsche Bank was in possession of the Mortgage and fully endorsed Note, Deutsche Bank was an assignee with standing to enforce its rights with respect to the Bevins Loan pursuant to the PSA, including filing the POC.

The 2009 Assignment of the Bevins Loan from MERS as nominee for Homecomings to Deutsche Bank, did not effect the earlier assignment of the Bevins Loan by physical possession. As set forth in the Farber Aff., the purpose of the written assignment was to document in the records of the NYC Department of Finance that the ownership of the Bevins Loan had been transferred to Deutsche Bank. *See* Farber Aff. at ¶ 9.

Deutsche Bank has continuously possessed the fully endorsed Note, since it was deposited into the Trust. *See* Farber Aff. at ¶ 8. By virtue of its possession of the endorsed Note, Deutsche Bank is the holder of the note, and thus, either it or GMACM has standing in this proceeding to seek payment thereof.

## II.     **Debtors Request for Sanctions Should be Denied**

In order to merit the award of sanctions under 28 U.S.C. § 1927 and the inherent power of the Court, the Court must find bad faith based on clear evidence. *In re Galgano*, 358 B.R. 90 (Bkrtcy S.D.N.Y. 2007). In order to impose sanctions pursuant to its inherent power, a court must find that the challenged claim was without a colorable basis and the claim was brought in

bad faith. *Id*. at 105; *See also In re Roco Corp*, 37 B.R. 770 (Bkrtcy R.I., 1984) (where the debtor persisted in filing a claim that had been extensively litigated; thus, sanctions were appropriate.)

Here, there is no such conduct by the Secured Creditor. The Secured Creditor's claim is meritorious and its standing is supported by documentary evidence. Debtor has failed to demonstrate that the Secured Creditor has engaged in frivolous or other improper conduct in this case that merit the imposition of sanctions. The Court should deny the relief requested.

## CONCLUSION

As set forth above, the Mortgage and Note were properly securitized on or prior to the closing date and has been properly held by the Trustee. Moreover, the documentary evidence establishes the Secured Creditor's standing to file its Claim. Accordingly, Debtor's Objection should be disallowed.

DATED:    New York, New York
          January 10, 2011

HINSHAW & CULBERTSON LLP

*/s/ Khardeen I. Shillingford*
Schuyler B. Kraus (515364)
Khardeen I. Shillingford (516622)

780 Third Avenue, 4th Floor
New York, New York 10017
(212) 471-6200
*Attorneys for GMAC Mortgage LLC*

10

130049976v1 0919091 55921