# EXHIBIT 2

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: George S. Bevins | : |
| | : |
| Debtor(s) | : |
| | : |
| | : |
| Address: 100 Starks Knob Road | : |
| Schuylerville, NY 12871 | : |
| | : |
| | : |
| Last Four Digits of SSN: 3595 | : |
| | : |

STATE OF MINNESOTA        :
                          : SS
COUNTY OF HENNEPIN        :

I, Steve Naasz, being of full age, being duly sworn according to law, state as follows:

1. I am a Vice President/Client Service Consultant for Wells Fargo Bank, N.A. ("WFB") which serves as the custodian of mortgages for Deutsche Bank Trust Company Americas as Trustee for the Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS18 Trust ("Deutsche Bank"). As such, I have personal knowledge of the facts, or have gained knowledge from my review of documents in WFB's control set forth herein.

2. As a Client Service Consultant, my responsibilities include management of the collateral files which WFB holds, as custodian, for Deutsche Bank.

3. WFB, Residential Funding Corporation ("RFC") and Deutsche Bank entered into a Custodial Agreement whereby WFB "agreed to act as agent for [Deutsche Bank] for the purposes of receiving and holding certain documents and other instruments" delivered pursuant to a Pooling and Servicing Agreement dated December 1, 2006 by and between RFC as master servicer, Residential Accredit Loans, Inc., and Deutsche Bank. *See* Custodial Agreement attached hereto as Exhibit A with relevant page of loan schedule.

4. Specifically, the Custodial Agreement states that WFB, as custodian, acting "as the duly appointed agent of the Trustee…acknowledges receipt of the Custodial Files relating to the Mortgage Loans identified on the schedule attached hereto…and declares that it holds and will hold the Custodial Files as agent for the Trustee, in trust…". *See* Custodial Agreement, ¶ 2.1.

5. Pursuant to the Custodial Agreement, WFB received, on behalf of Deutsche Bank, debtor's original note and original mortgage on or before December 28, 2006 and has had same in its possession and custody since that time. *See* Custodial Receipt dated December 28, 2006 with Exception Report, attached hereto as Exhibit B. Notably, on January 21, 2011, WFB sent the collateral file with debtor's original note and original mortgage to counsel for Deutsche Bank and GMACM, Hinshaw & Culbertson LLP, who are acting as bailee for the parties.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Steve Naasz

SWORN and ACKNOWLEDGED before me on this the *27* day of January, 2011.

_____
Notary Public

*1-31-2015*



JOEANN JACKSON-MATTHEWS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2015

130055117v1 0919091 55921

# EXHIBIT A

Custodial Agreement & Relevant Page of Loan Schedule

**Execution Copy**

## CUSTODIAL AGREEMENT

THIS CUSTODIAL AGREEMENT (as amended and supplemented from time to time, the "Agreement"), dated as of December 1, 2006, by and among DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee (including its successors under the Pooling Agreement defined below, the "Trustee"), RESIDENTIAL ACCREDIT LOANS, INC. (together with any successor in interest, the "Company"), RESIDENTIAL FUNDING COMPANY, LLC, as master servicer (together with any successor in interest or successor under the Pooling Agreement referred to below, the "Master Servicer"), and WELLS FARGO BANK NATIONAL ASSOCIATION (together with any successor in interest or any successor appointed hereunder, the "Custodian").

W I T N E S S E T H   T H A T :

WHEREAS, the Company, the Master Servicer, and the Trustee have entered into a Series Supplement, dated as of December 1, 2006, and the Standard Terms of Pooling and Servicing Agreement, dated as of December 1, 2006, relating to the issuance of Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS18 (collectively, as in effect on the date of this Agreement, the "Original Pooling Agreement," and as amended and supplemented from time to time, the "Pooling Agreement"); and

WHEREAS, the Custodian has agreed to act as agent for the Trustee for the purposes of receiving and holding certain documents and other instruments delivered by the Company and the Master Servicer under the Pooling Agreement, all upon the terms and conditions and subject to the limitations hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the Trustee, the Company, the Master Servicer and the Custodian hereby agree as follows:

ARTICLE I

Definitions

Capitalized terms used in this Agreement and not defined herein shall have the meanings assigned in the Original Pooling Agreement, unless otherwise required by the context herein.

ARTICLE II

Custody of Mortgage Documents

Section 2.1.  <u>Custodian to Act as Agent; Acceptance of Custodial Files</u>.  The Company and Master Servicer hereby direct the Trustee to appoint Wells Fargo Bank, National Association as the Custodian hereunder. The Custodian, as the duly appointed agent of the Trustee

OHS East:160145590.3

for these purposes, acknowledges receipt of the Custodial Files relating to the Mortgage Loans identified on the schedule attached hereto (the "Custodial Files") and declares that it holds and will hold the Custodial Files as agent for the Trustee, in trust, for the use and benefit of all present and future Certificateholders.

Section 2.2.  Recordation of Assignments.  If any Custodial File includes one or more assignments of the related Mortgages to the Trustee that have not been recorded, each such assignment shall be delivered by the Custodian to the Company for the purpose of recording it in the appropriate public office for real property records, and the Company, at no expense to the Custodian, shall promptly cause to be recorded in the appropriate public office for real property records each such assignment and, upon receipt thereof from such public office, shall return each such assignment to the Custodian.

Section 2.3.  Review of Custodial Files.

(a)  On or prior to the Closing Date, the Custodian shall deliver to the Trustee an Initial Certification in the form annexed hereto as Exhibit One evidencing receipt of a Custodial File for each Mortgage Loan listed on the Schedule attached hereto (the "Mortgage Loan Schedule"). The parties hereto acknowledge that certain documents referred to in Subsection 2.01(b)(i) of the Pooling Agreement may be missing on or prior to the Closing Date and such missing documents shall be listed as a Schedule to Exhibit One.

(b)  Within 45 days after the Closing Date, the Custodian agrees, for the benefit of Certificateholders, to review each Custodial File and to deliver to the Trustee an Interim Certification in the form annexed hereto as Exhibit Two to the effect that all documents required to be delivered pursuant to Section 2.01(b) of the Pooling Agreement have been executed and received and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, except for any exceptions listed on Schedule A attached to such Interim Certification.  For purposes of such review, the Custodian shall compare the following information in each Custodial File to the corresponding information in the Mortgage Loan Schedule: (i) the loan number, (ii) the borrower name and (iii) the original principal balance.  In the event that any Mortgage Note or Assignment of Mortgage has been delivered to the Custodian by the Company in blank, the Custodian, upon the direction of the Company, shall cause each such Mortgage Note to be endorsed to the Trustee and each such Assignment of Mortgage to be completed in the name of the Trustee prior to the date on which such Interim Certification is delivered to the Trustee.  Within 45 days of receipt of the documents required to be delivered pursuant to Section 2.01(c) of the Pooling Agreement, the Custodian agrees, for the benefit of the Certificateholders, to review each such document, and upon the written request of the Trustee to deliver to the Trustee an updated Schedule A to the Interim Certification.  The Custodian shall be under no duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable, or appropriate for the represented purpose or that they have actually been recorded or that they are other than what they purport to be on their face, or that the MIN is accurate.  If in performing the review required by this Section 2.3 the Custodian finds any document or documents constituting a part of a Custodial File to be missing or defective in respect of the items reviewed as described in this Section 2.3(b), the Custodian shall promptly so notify the Company, the Master Servicer and the Trustee.

(c)    Upon receipt of all documents required to be in the Custodial Files the Custodian shall deliver to the Trustee a Final Certification in the form annexed hereto as Exhibit Three evidencing the completeness of the Custodial Files.

Upon receipt of written request from the Trustee, the Company or the Master Servicer, the Custodian shall as soon as practicable supply the Trustee with a list of all of the documents relating to the Mortgage Loans required to be delivered pursuant to Section 2.01(b) of the Pooling Agreement not then contained in the Custodial Files.

Section 2.4.    Notification of Breaches of Representations and Warranties.    If the Custodian discovers, in the course of performing its custodial functions, a breach of a representation or warranty made by the Master Servicer or the Company as set forth in the Pooling Agreement with respect to a Mortgage Loan relating to a Custodial File, the Custodian shall give prompt written notice to the Company, the Master Servicer and the Trustee.

Section 2.5.    Custodian to Cooperate; Release of Custodial Files.    Upon the repurchase or substitution of any Mortgage Loan pursuant to Article II of the Pooling Agreement or payment in full of any Mortgage Loan, or the receipt by the Master Servicer of a notification that payment in full will be escrowed in a manner customary for such purposes, the Master Servicer shall immediately notify the Custodian by delivering to the Custodian a Request for Release (in the form of Exhibit Four attached hereto or a mutually acceptable electronic form) and shall request delivery to it of the Custodial File. The Custodian agrees, upon receipt of such Request for Release, promptly to release to the Master Servicer the related Custodial File.

Upon receipt of a Request for Release from the Master Servicer, signed by a Servicing Officer, that (i) the Master Servicer or a Subservicer, as the case may be, has made a deposit into the Certificate Account in payment for the purchase of the related Mortgage Loan in an amount equal to the Purchase Price for such Mortgage Loan or (ii) the Company has chosen to substitute a Qualified Substitute Mortgage Loan for such Mortgage Loan, the Custodian shall release to the Master Servicer the related Custodial File.

Upon written notification of a substitution, the Master Servicer shall deliver to the Custodian and the Custodian agrees to accept the Mortgage Note and other documents constituting the Custodial File with respect to any Qualified Substitute Mortgage Loan, upon receiving written notification from the Master Servicer of such substitution.

From time to time as is appropriate for the servicing or foreclosures of any Mortgage Loan, including, for this purpose, collection under any Primary Insurance Policy or any Mortgage Pool Insurance Policy, the Master Servicer shall deliver to the Custodian a Request for Release certifying as to the reason for such release. Upon receipt of the foregoing, the Custodian shall deliver the Custodial File or such document to the Master Servicer. All Custodial Files so released to the Master Servicer shall be held by it in trust for the Trustee for the use and benefit of all present and future Certificateholders. The Master Servicer shall cause each Custodial File or any document therein so released to be returned to the Custodian when the need therefor by the Master Servicer no longer exists, unless (i) the Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Mortgage Loan have been deposited in the Custodial Account or (ii) the Custodial File or such document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings

for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Master Servicer has delivered to the Custodian an updated Request for Release signed by a Servicing Officer certifying as to the name and address of the Person to which such Custodial File or such document was delivered and the purpose or purposes of such delivery. Immediately upon receipt of any Custodial File returned to the Custodian by the Master Servicer, the Custodian shall deliver a signed acknowledgement to the Master Servicer, confirming receipt of such Custodial File.

Upon the written request of the Master Servicer, the Custodian will send to the Master Servicer copies of any documents contained in the Custodial File.

Section 2.6. <u>Assumption Agreements</u>. In the event that any assumption agreement or substitution of liability agreement is entered into with respect to any Mortgage Loan subject to this Agreement in accordance with the terms and provisions of the Pooling Agreement, the Master Servicer shall notify the Custodian that such assumption or substitution agreement has been completed by forwarding to the Custodian the original of such assumption or substitution agreement, which shall be added to the related Custodial File and, for all purposes, shall be considered a part of such Custodial File to the same extent as all other documents and instruments constituting parts thereof.

## ARTICLE III

### Concerning the Custodian

Section 3.1. <u>Custodian a Bailee and Agent of the Trustee</u>. With respect to each Mortgage Note, Mortgage and other documents constituting each Custodial File which are delivered to the Custodian, the Custodian is exclusively the bailee and agent of the Trustee and has no instructions to hold any Mortgage Note or Mortgage for the benefit of any person other than the Trustee, holds such documents for the benefit of Certificateholders and undertakes to perform such duties and only such duties as are specifically set forth in this Agreement. Except upon compliance with the provisions of Section 2.5 of this Agreement, no Mortgage Note, Mortgage or other document constituting a part of a Custodial File shall be delivered by the Custodian to the Company or the Master Servicer or otherwise released from the possession of the Custodian.

The Master Servicer shall promptly notify the Custodian in writing if it shall no longer be a member of MERS, or if it otherwise shall no longer be capable of registering and recording Mortgage Loans using MERS. In addition, the Master Servicer shall (i) promptly notify the Custodian in writing when a MERS Mortgage Loan is no longer registered with and recorded under MERS and (ii) concurrently with any such deregistration of a MERS Mortgage Loan, prepare, execute and record an original assignment from MERS to the Trustee and deliver such assignment to the Custodian.

Section 3.2. <u>Indemnification</u>. The Company hereby agrees to indemnify and hold the Custodian harmless from and against all claims, liabilities, losses, actions, suits or proceedings at law or in equity, or any other expenses, fees or charges of any character or nature, which the Custodian may incur or with which the Custodian may be threatened by reason of its acting as custodian under this Agreement, including indemnification of the Custodian against any and all expenses, including attorney's fees if counsel for the Custodian has been approved by the Company,

and the cost of defending any action, suit or proceedings or resisting any claim. Notwithstanding the foregoing, it is specifically understood and agreed that in the event any such claim, liability, loss, action, suit or proceeding or other expense, fee or charge shall have been caused by reason of any negligent act, negligent failure to act or willful misconduct on the part of the Custodian, or which shall constitute a willful breach of its duties hereunder, the indemnification provisions of this Agreement shall not apply.

Section 3.3.  Custodian May Own Certificates.  The Custodian in its individual or any other capacity may become the owner or pledgee of Certificates with the same rights it would have if it were not Custodian.

Section 3.4.  Master Servicer to Pay Custodian's Fees and Expenses.  The Master Servicer covenants and agrees to pay to the Custodian from time to time, and the Custodian shall be entitled to, reasonable compensation for all services rendered by it in the exercise and performance of any of the powers and duties hereunder of the Custodian, and the Master Servicer shall pay or reimburse the Custodian upon its request for all reasonable expenses, disbursements and advances incurred or made by the Custodian in accordance with any of the provisions of this Agreement (including the reasonable compensation and the expenses and disbursements of its counsel and of all persons not regularly in its employ), except any such expense, disbursement or advance as may arise from its negligence or bad faith.

Section 3.5.  Custodian May Resign; Trustee May Remove Custodian.  The Custodian may resign from the obligations and duties hereby imposed upon it as such obligations and duties relate to its acting as Custodian of the Mortgage Loans.  Upon receiving such notice of resignation, the Trustee shall either take custody of the Custodial Files itself and give prompt notice thereof to the Company, the Master Servicer and the Custodian, or promptly appoint a successor Custodian by written instrument, in duplicate, one copy of which instrument shall be delivered to the resigning Custodian and one copy to the successor Custodian.  If the Trustee shall not have taken custody of the Custodial Files and no successor Custodian shall have been so appointed and have accepted appointment within 30 days after the giving of such notice of resignation, the resigning Custodian may petition any court of competent jurisdiction for the appointment of a successor Custodian.

The Trustee may and shall, at the direction of the Master Servicer and the Company, remove the Custodian at any time.  In such event, the Trustee shall appoint, or petition a court of competent jurisdiction to appoint, a successor Custodian hereunder.  Any successor Custodian shall be a depository institution subject to supervision or examination by federal or state authority and shall be able to satisfy the other requirements contained in Section 3.7 and shall be unaffiliated with the Master Servicer or the Company.

Any resignation or removal of the Custodian and appointment of a successor Custodian pursuant to any of the provisions of this Section 3.5 shall become effective upon acceptance of appointment by the successor Custodian. The Trustee shall give prompt notice to the Company and the Master Servicer of the appointment of any successor Custodian. No successor Custodian shall be appointed by the Trustee without the prior approval of the Company and the Master Servicer.

Section 3.6.  <u>Merger or Consolidation of Custodian</u>.  Any Person into which the Custodian may be merged or converted or with which it may be consolidated, or any Person resulting from any merger, conversion or consolidation to which the Custodian shall be a party, or any Person succeeding to the business of the Custodian, shall be the successor of the Custodian hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided that such successor is a depository institution subject to supervision or examination by federal or state authority and is able to satisfy the other requirements contained in Section 3.7 and is unaffiliated with the Master Servicer or the Company.

Section 3.7.  <u>Representations of the Custodian</u>.  The Custodian hereby represents that it is a depository institution subject to supervision or examination by a federal or state authority, has a combined capital and surplus of at least $15,000,000 and is qualified to do business in the jurisdictions in which it will hold any Custodial File.

ARTICLE IV

Compliance with Regulation AB

Section 4.1.  <u>Intent of the Parties; Reasonableness</u>.  The parties hereto acknowledge and agree that the purpose of this Article IV is to facilitate compliance by the Company with the provisions of Regulation AB and related rules and regulations of the Commission.  The Company shall not exercise its right to request delivery of information or other performance under these provisions other than in good faith, or for purposes other than compliance with the Securities Act, the Exchange Act and the rules and regulations of the Commission under the Securities Act and the Exchange Act.  Each of the parties hereto acknowledges that interpretations of the requirements of Regulation AB may change over time, whether due to interpretive guidance provided by the Commission or its staff, consensus among participants in the mortgage-backed securities markets, advice of counsel, or otherwise, and agrees to comply with requests made by the Company in good faith for delivery of information under these provisions on the basis of evolving interpretations of Regulation AB. The Custodian shall cooperate reasonably with the Company to deliver to the Company (including any of its assignees or designees), any and all disclosure, statements, reports, certifications, records and any other information necessary in the reasonable, good faith determination of the Company to permit the Company to comply with the provisions of Regulation AB.

Section 4.2.  <u>Additional Representations and Warranties of the Custodian</u>.

(a)  The Custodian hereby represents and warrants that the information set forth under the caption "Pooling and Servicing Agreement – Custodial Arrangements" (the "<u>Custodian Disclosure</u>") does not contain any untrue statement of a material fact or omit to state a material required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(b)  The Custodian shall be deemed to represent to the Company as of the date hereof and on each date on which information is provided to the Company under Section 4.3 that, except as disclosed in writing to the Company prior to such date:  (i) there are no aspects of its

financial condition that could have a material adverse effect on the performance by it of its Custodian obligations under this Agreement or any other Securitization Transaction as to which it is the custodian; (ii) there are no material legal or governmental proceedings pending (or known to be contemplated) against it; and (iii) there are no affiliations, relationships or transactions relating to the Custodian with respect to the Company or any sponsor, issuing entity, servicer, trustee, originator, significant obligor, enhancement or support provider or other material transaction party (as such terms are used in Regulation AB) relating to the Securitization Transaction contemplated by the Agreement, as identified by the Company to the Custodian in writing as of the Closing Date (each, a "Transaction Party").

(c)  If so requested by the Company on any date following the Closing Date, the Custodian shall, within five Business Days following such request, confirm in writing the accuracy of the representations and warranties set forth in paragraph (a) of this Section or, if any such representation and warranty is not accurate as of the date of such confirmation, provide reasonably adequate disclosure of the pertinent facts, in writing, to the requesting party. Any such request from the Company shall not be given more than once each calendar quarter, unless the Company shall have a reasonable basis for a determination that any of the representations and warranties may not be accurate.

Section 4.3.  <u>Additional Information to Be Provided by the Custodian</u>.  For so long as the Certificates are outstanding, for the purpose of satisfying the Company's reporting obligation under the Exchange Act with respect to any class of Certificates, the Custodian shall (a) notify the Company in writing of any material litigation or governmental proceedings pending against the Custodian that would be material to Certificateholders, and (b) provide to the Company a written description of such proceedings. Any notices and descriptions required under this Section 4.3 shall be given no later than five Business Days prior to the Determination Date following the month in which the Custodian has knowledge of the occurrence of the relevant event. As of the date the Company or Master Servicer files each Report on Form 10-D or Form 10-K with respect to the Certificates, the Custodian will be deemed to represent that any information previously provided under this Section 4.3, if any, is materially correct and does not have any material omissions unless the Custodian has provided an update to such information. For purposes of this Section 4.3, the term "Determination Date" shall mean, with respect to any Distribution Date, the second Business Day prior to each Distribution Date, and the term "Distribution Date" shall mean the 25th day of any month beginning in the month immediately following the month of the initial issuance of the Certificates or, if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

Section 4.4.  <u>Report on Assessment of Compliance and Attestation</u>.  On or before March 15 of each calendar year, the Custodian shall:

(a)  deliver to the Company a report (in form and substance reasonably satisfactory to the Company) regarding the Custodian's assessment of compliance with the Servicing Criteria during the immediately preceding calendar year, as required under Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122 of Regulation AB. Such report shall be addressed to the Company and signed by an authorized officer of the Custodian, and shall address each of the Servicing Criteria specified on a certification substantially in the form of Exhibit Five hereto; and

(b)    deliver to the Company a report of a registered public accounting firm reasonably acceptable to the Company that attests to, and reports on, the assessment of compliance made by the Custodian and delivered pursuant to the preceding paragraph.  Such attestation shall be in accordance with Rules 1-02(a)(3) and 2-02(g) of Regulation S-X under the Securities Act and the Exchange Act.

Section 4.5.  Indemnification; Remedies.

(a)  The Custodian shall indemnify the Company, each affiliate of the Company, the Master Servicer and each broker dealer acting as underwriter, placement agent or initial purchaser of the Certificates or each Person who controls any of such parties (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act); and the respective present and former directors, officers, employees and agents of each of the foregoing, and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that any of them may sustain arising out of or based upon:

(i)(A)  any untrue statement of a material fact contained or alleged to be contained in the Custodian Disclosure and any information, report, certification, accountants' attestation or other material provided under this Article IV by or on behalf of the Custodian (collectively, the "Custodian Information"), or (B) the omission or alleged omission to state in the Custodian Information a material fact required to be stated in the Custodian Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; or

(ii)  any failure by the Custodian to deliver any information, report, certification, accountants' attestation or other material when and as required under this Article IV.

(b)    In the case of any failure of performance described in clause (ii) of Section 4.5(a), the Custodian shall promptly reimburse the Company for all costs reasonably incurred by the Company in order to obtain the information, report, certification, accountants' letter or other material not delivered as required by the Custodian.

ARTICLE V

Miscellaneous Provisions

Section 5.1.  Notices.  All notices, requests, consents and demands and other communications required under this Agreement or pursuant to any other instrument or document delivered hereunder shall be in writing and, unless otherwise specifically provided, may be delivered personally, by telegram or telex, or by registered or certified mail, postage prepaid, return receipt requested, at the addresses specified on the signature page hereof (unless changed by the particular party whose address is stated herein by similar notice in writing), in which case the notice will be deemed delivered when received.

Section 5.2.  Amendments.  No modification or amendment of or supplement to this Agreement shall be valid or effective unless the same is in writing and signed by all parties hereto,

and neither the Company, the Master Servicer nor the Trustee shall enter into any amendment of or supplement to this Agreement except as permitted by the Pooling Agreement. The Trustee shall give prompt notice to the Custodian of any amendment or supplement to the Pooling Agreement and furnish the Custodian with written copies thereof.

Section 5.3.  <u>Governing Law</u>. This Agreement shall be deemed a contract made under the laws of the State of New York and shall be construed and enforced in accordance with and governed by the laws of the State of New York.

Section 5.4.  <u>Recordation of Agreement</u>. To the extent permitted by applicable law, this Agreement is subject to recordation in all appropriate public offices for real property records in all the counties or other comparable jurisdictions in which any or all of the properties subject to the Mortgages are situated, and in any other appropriate public recording office or elsewhere, such recordation to be effected by the Master Servicer and at its expense on direction by the Trustee (pursuant to the request of holders of Certificates evidencing undivided interests in the aggregate of not less than 25% of the Trust Fund), but only upon direction accompanied by an Opinion of Counsel reasonably satisfactory to the Master Servicer to the effect that the failure to effect such recordation is likely to materially and adversely affect the interests of the Certificateholders.

For the purpose of facilitating the recordation of this Agreement as herein provided and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.

Section 5.5.  <u>Severability of Provisions</u>. If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Certificates or the rights of the holders thereof.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

Address:

1761 East St. Andrew Place
Santa Ana, California 92705-4934
Attn:  Residential Accredit Loans, Inc.
        Series 2006-QS18

DEUTSCHE    BANK    TRUST    COMPANY
AMERICAS, as Trustee

By: _____
Name:         Amy Stoddard
Title:         Authorized Signer

By: _____
Name:        Karlene Benvenuto
Title:        Authorized Signer

Address:

8400 Normandale Lake Boulevard
Minneapolis, Minnesota  55437

RESIDENTIAL ACCREDIT LOANS, INC.

By: _____
Name:  Tim Jacobson
Title:   Vice President

Address:

8400 Normandale Lake Boulevard
Suite 250
Minneapolis, Minnesota 55437

RESIDENTIAL FUNDING COMPANY, LLC,
as Master Servicer

By: _____
Name:  Heather Anderson
Title:   Associate

Address:

Mortgage Document Custody
One Meridian Crossings, 3rd Floor
Richfield, Minnesota  55423

WELLS FARGO BANK NATIONAL
ASSOCIATION

By: _____
Name:
Title:

Custodial Agreement

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

Address:

1761 East St. Andrew Place
Santa Ana, California 92705-4934
Attn:    Residential Accredit Loans, Inc.
          Series 2006-QS18

DEUTSCHE        BANK        TRUST        COMPANY
AMERICAS, as Trustee

By:    _____
Name:
Title:

By:    _____
Name:
Title:

Address:

8400 Normandale Lake Boulevard
Minneapolis, Minnesota  55437

RESIDENTIAL ACCREDIT LOANS, INC.

By:    _____
Name:   Tim Jacobson
Title:   Vice President

Address:

8400 Normandale Lake Boulevard
Suite 250
Minneapolis, Minnesota 55437

RESIDENTIAL FUNDING COMPANY, LLC,
as Master Servicer

By:    _____
Name:   Heather Anderson
Title:   Associate

Address:

Mortgage Document Custody
One Meridian Crossings, 3rd Floor
Richfield, Minnesota  55423

WELLS FARGO BANK NATIONAL
ASSOCIATION

By: _____
Name:
Title:

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

Address:

1761 East St. Andrew Place
Santa Ana, California 92705-4934
Attn: Residential Accredit Loans, Inc.
 Series 2006-QS18

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee


By:_____
Name:
Title:


By:_____
Name:
Title:


Address:

8400 Normandale Lake Boulevard
Minneapolis, Minnesota 55437

RESIDENTIAL ACCREDIT LOANS, INC


By:_____
Name: Tim Jacobson
Title: Vice President


Address:

8400 Normandale Lake Boulevard
Suite 250
Minneapolis, Minnesota 55437

RESIDENTIAL FUNDING COMPANY, LLC,
as Master Servicer


By:_____
Name: Heather Anderson
Title: Associate


Address:

Mortgage Document Custody
One Meridian Crossings, Lower Level
Richfield, Minnesota 55423

WELLS FARGO BANK NATIONAL
ASSOCIATION


By:_____
Name: Mark Hammer
Title: Assistant Vice President

STATE OF CALIFORNIA          )
                             ) ss.:
COUNTY OF ORANGE             )

On the 28th day of December, 2006 before me, a notary public in and for said State, personally appeared _Amy Sklar_ known to me to be a(n) _Authorized Signer_ Deutsche Bank Trust Company Americas, the New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.



[Notarial Seal]

DIANA NGUYEN
Commission # 1604326
Notary Public - California
Orange County
My Comm. Expires Sep 4, 2009

_____
Notary Public

STATE OF CALIFORNIA          )
                             ) ss.:
COUNTY OF ORANGE             )

On the 28th day of December, 2006 before me, a notary public in and for said State, personally appeared _Carlene Vance_ known to me to be a(n) _Authorized Signer_ of Deutsche Bank Trust Company Americas, the New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.



[Notarial Seal]

DIANA NGUYEN
Commission # 1604326
Notary Public - California
Orange County
My Comm. Expires Sep 4, 2009

_____
Notary Public

Custodial Agreement

STATE OF MINNESOTA     )
                             ) ss:

COUNTY OF HENNEPIN     )

On the 28th day of December, 2006 before me, a notary public in and for said State, personally appeared Tim Jacobson, known to me to be a Vice President of Residential Accredit Loans, Inc., one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.



_____
Notary Public

[Notarial Seal]

STATE OF MINNESOTA     )
                             ) ss:

COUNTY OF HENNEPIN     )

On the 28th day of December, 2006 before me, a notary public in and for said State, personally appeared Heather Anderson, known to me to be an Associate of Residential Funding Company, LLC, one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate  first above written.



_____
Notary Public

[Notarial Seal]

Custodial Agreement

STATE OF MINNESOTA   )
                              ) ss.:

COUNTY OF HENNEPIN   )


On the 21st day of December, 2006, before me, a notary public in and for said State, personally appeared Mark Hammer, known to me to be an Assistant Vice President of Wells Fargo Bank National Association, a national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said national banking association, and acknowledged to me that such national banking association executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.



_____
Notary Public


[Notarial Seal]

EXHIBIT ONE

FORM OF CUSTODIAN INITIAL CERTIFICATION


December ___, 2006


Deutsche Bank Trust Company Americas
1761 East St. Andrew Place
Santa Ana, California  92705-4934
Attention:  Residential Accredit Loans, Inc., Series 2006-QS18

Re:    Custodial Agreement, dated as of December 1, 2006, by and among Deutsche Bank Trust Company Americas, Residential Accredit Loans, Inc., Residential Funding Company, LLC and Wells Fargo Bank, National Association, relating to Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS18

Ladies and Gentlemen:

In accordance with Section 2.3 of the above-captioned Custodial Agreement, and subject to Section 2.02 of the Pooling Agreement, the undersigned, as Custodian, hereby certifies that it has received a Custodial File (which contains an original Mortgage Note or an original Lost Note Affidavit with a copy of the related Mortgage Note) to the extent required in Section 2.01(b) of the Pooling Agreement with respect to each Mortgage Loan listed in the Mortgage Loan Schedule, with any exceptions listed on Schedule A attached hereto.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Custodial Agreement.


WELLS FARGO BANK NATIONAL
ASSOCIATION


By:    _____
Name:
Title:

EXHIBIT TWO

FORM OF CUSTODIAN INTERIM CERTIFICATION


_____, 2006


Deutsche Bank Trust Company Americas
1761 East St. Andrew Place
Santa Ana, California  92705-4934
Attention:  Residential Accredit Loans, Inc., Series 2006-QS18

Re:    Custodial Agreement, dated as of December 1, 2006, by and among Deutsche Bank
Trust Company Americas, Residential Accredit Loans, Inc., Residential Funding
Company, LLC and Wells Fargo Bank, National Association, relating to Residential
Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates Series
2006-QS18

Ladies and Gentlemen:

In accordance with Section 2.3 of the above-captioned Custodial Agreement, the
undersigned, as Custodian, hereby certifies that it has received a Custodial File to the extent
required pursuant to Section 2.01(b) of the Pooling Agreement with respect to each Mortgage Loan
listed in the Mortgage Loan Schedule, and it has reviewed the Custodial File and the Mortgage
Loan Schedule and has determined that:  all required documents have been executed and received
and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule,
with any exceptions listed on Schedule A attached hereto.

Capitalized words and phrases used herein shall have the respective meanings
assigned to them in the above-captioned Custodial Agreement.


WELLS FARGO BANK NATIONAL
ASSOCIATION


By:    _____
Name:
Title:

EXHIBIT THREE

FORM OF CUSTODIAN FINAL CERTIFICATION

_____, 200_

Deutsche Bank Trust Company Americas
1761 East St. Andrew Place
Santa Ana, California  92705-4934
Attention:  Residential Accredit Loans, Inc., Series 2006-QS18

Re:   Custodial Agreement, dated as of December 1, 2006, by and among Deutsche Bank
Trust Company Americas, Residential Accredit Loans, Inc., Residential Funding
Company, LLC and Wells Fargo Bank, National Association, relating to Residential
Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates Series
2006-QS18

Ladies and Gentlemen:

In accordance with Section 2.3 of the above-captioned Custodial Agreement, the
undersigned, as Custodian, hereby certifies that it has received a Custodial File with respect to each
Mortgage Loan listed in the Mortgage Loan Schedule and it has reviewed the Custodial File  and
the Mortgage Loan Schedule and has determined that: all required documents referred to in Section
2.01(b) of the Pooling Agreement have been executed and received and that such documents relate
to the Mortgage Loans identified on the Mortgage Loan Schedule.

Capitalized words and phrases used herein shall have the respective meanings
assigned to them in the above-captioned Custodial Agreement.

WELLS FARGO BANK NATIONAL
ASSOCIATION

By:   _____
Name:
Title:

EXHIBIT FOUR
FORM OF REQUEST FOR RELEASE

DATE:

TO:

RE:          REQUEST FOR RELEASE OF DOCUMENTS

In connection with the administration of the pool of Mortgage Loans held by you for the
referenced pool, we request the release of the Mortgage Loan File described below.

Pooling and Servicing Agreement Dated:
Series#:
Account#:
Pool#:
Loan#:
MIN#:
Borrower Name(s):
Reason for Document Request:      (circle one)

     Mortgage Loan Prepaid in Full          Mortgage Loan Repurchased

"We hereby certify that all amounts received or to be received in connection with such payments
which are required to be deposited have been or will be so deposited as provided in the Pooling
and Servicing Agreement."

_____

Residential Funding Company, LLC
Authorized Signature

**************************************************************************

TO CUSTODIAN/TRUSTEE:  Please acknowledge this request, and check off documents being
enclosed with a copy of this form.  You should retain this form for your files in accordance with
the terms of the Pooling and Servicing Agreement.

Enclosed Documents:        [ ]    Promissory Note
                           [ ]    Primary Insurance Policy
                           [ ]    Mortgage or Deed of Trust
                           [ ]    Assignment(s) of Mortgage or Deed of Trust
                           [ ]    Title Insurance Policy
                           [ ]    Other:

Name:_____
Title:_____
Date:_____

EXHIBIT FIVE

SERVICING CRITERIA TO BE ADDRESSED IN ASSESSMENT OF COMPLIANCE

The assessment of compliance to be delivered by the Custodian shall address, at a minimum, the criteria identified as below as "Applicable Servicing Criteria":

| Servicing Criteria | | Applicable Servicing Criteria |
|---|---|---|
| **Reference** | **Criteria** | |
| | **General Servicing Considerations** | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the pool assets are maintained. | |
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | |
| | **Cash Collection and Administration** | |
| 1122(d)(2)(i) | Payments on pool assets are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of overcollateralization, are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | |

| Reference | *Servicing Criteria* | *Applicable Servicing Criteria* |
|---|---|---|
| | Criteria | |
| | **Investor Remittances and Reporting** | |
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of pool assets serviced by the servicer. | |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the servicer's investor records, or such other number of days specified in the transaction agreements. | |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | |
| | **Pool Asset Administration** | |
| 1122(d)(4)(i) | Collateral or security on pool assets is maintained as required by the transaction agreements or related asset pool documents. | ✓ |
| 1122(d)(4)(ii) | Pool assets and related documents are safeguarded as required by the transaction agreements | ✓ |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | |
| 1122(d)(4)(iv) | Payments on pool assets, including any payoffs, made in accordance with the related pool asset documents are posted to the servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related pool asset documents. | |
| 1122(d)(4)(v) | The servicer's records regarding the pool assets agree with the servicer's records with respect to an obligor's unpaid principal balance. | |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's pool asset (e.g., loan modifications or re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents. | |
| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | |
| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a pool asset is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent pool assets including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | |
| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for pool assets with variable rates are computed based on the related pool asset documents. | |

| Servicing Criteria | | Applicable Servicing Criteria |
|---|---|---|
| **Reference** | **Criteria** | |
| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's pool asset documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in accordance with applicable pool asset documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related pool asset, or such other number of days specified in the transaction agreements. | |
| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | |
| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | |
| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the servicer, or such other number of days specified in the transaction agreements. | |
| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts are recognized and recorded in accordance with the transaction agreements. | |
| 1122(d)(4)(xv) | Any external enhancement or other support, identified in Item 1114(a)(1) through (3) or Item 1115 of Regulation AB, is maintained as set forth in the transaction agreements. | |
| | | |

```
11083887       E22/G02        F               154,920.00        ZZ
                              360             154,799.15        1
                              7.2500          1056.83           80
                              7.0000          1056.83
CEDAR PARK     TX 78613       1               10/25/06          00
0471162313                    03              12/01/06          0.0000
0471162313                    O               11/01/36
0

11083933       E22/G02        F               280,000.00        ZZ
                              360             279,797.35        1
                              7.6250          1981.82           80
                              7.3750          1981.82
CALEDONIA      IL 61011       2               10/23/06          00
0471188813                    05              12/01/06          0.0000
0471188813                    O               11/01/36
0

11083943       E22/G02        F               172,000.00        ZZ
                              360             172,000.00        1
                              7.3750          1057.08           80
                              7.1250          1057.08
ANCHORAGE      AK 99502       1               10/20/06          00
0471193037                    05              12/01/06          0.0000
0471193037                    O               11/01/36
0

11083963       E22/G02        F               68,700.00         ZZ
                              360             68,652.72         1
                              7.8750          498.12            75
                              7.6250          498.12
HUFFMAN        TX 77336       1               10/23/06          00
0471207415                    03              12/01/06          0.0000
0471207415                    N               11/01/36

11083965       E22/G02        F               208,000.00        ZZ
                              360             208,000.00        1
                              7.7500          1343.33           80
                              7.5000          1343.33
GEORGETOWN     DE 19947       1               10/27/06          00
0471207977                    05              12/01/06          0.0000
0471207977                    O               11/01/36
0

11083969       E22/G02        F               91,500.00         ZZ
                              360             91,428.62         2
                              7.2500          624.19            75
                              7.0000          624.19
LEES SUMMIT    MO 64063       5               10/27/06          00
0471208314                    05              12/01/06          0.0000
0471208314                    N               11/01/36
0

11084015       E22/G02        F               313,360.00        ZZ
                              360             313,360.00        1
                              7.5000          1958.50           80
                              7.2500          1958.50
UNION          NJ 07083       1               10/27/06          00
0471232975                    05              12/01/06          0.0000
0471232975                    O               11/01/36
0

11084021       E22/G02        F               179,200.00        ZZ
                              360             179,070.30        1
                              7.6250          1268.37           78
                              7.3750          1268.37
GRAND JUNCTIONCO 81504        2               10/23/06          00
0471236711                    05              12/01/06          0.0000
0471236711                    O               11/01/36
0

11084035       E22/G02        F               151,120.00        ZZ
                              360             150,999.16        1
                              7.1250          1018.12           80
                              6.8750          1018.12
COON RAPIDS    MN 55448       1               10/27/06          00
0471240341                    05              12/01/06          0.0000
0471240341                    O               11/01/36
0

11084039       E22/G02        F               107,696.00        ZZ
                              360             107,611.98        1
                              7.2500          734.68            80
                              7.0000          734.68
NORTHUMBERLANDNY 12871        1               10/27/06          00
0471242891                    05              12/01/06          0.0000
0471242891                    O               11/01/36
0

11084113       E22/G02        F               63,000.00         ZZ
                              360             63,000.00         1
                              7.6250          400.31            70
                              7.3750          400.31
```

# EXHIBIT B

Custodial Receipt with Exception Report



**WELLS FARGO**

Wells Fargo Bank, N.A.
Document Custody
1 Meridian Crossings
Richfield, MN 55423
952 979-4307

EXHIBIT ONE
INITIAL CERTIFICATION

December 28, 2006

DEUTSCHE BANK TRUST COMPANY AMERICAS
1761 EAST ST. ANDREW PLACE
SANTA ANA, CALIFORNIA 92705-4934

ATTENTION: RESIDENTIAL ACCREDIT LOANS, INC., SERIES 2006-QS17

RE:    CUSTODIAL AGREEMENT, DATED AS OF DECEMBER 1, 2006, BY AND AMONG
Deutsche Bank Trust Company Americas, Residential Accredit Loans, Inc.,
Residential Funding Company, LLC and Wells Fargo Bank, National Association,
relating to Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through
Certificates Series 2006-QS18

Ladies and Gentlemen:

    In accordance with Section 2.3 of the above-captioned Custodial Agreement, and
subject to Section 2.02 of the Pooling Agreement, the undersigned, as Custodian, hereby certifies
that it has received a Custodial File (which contains an original Mortgage Note or an original
Lost Note Affidavit with a copy of the related Mortgage Note) to the extent required in Section
2.01(b) of the Pooling Agreement with respect to each Mortgage Loan listed in the Mortgage
Loan Schedule, with any exceptions listed on Schedule A attached hereto.

    Capitalized words and phrases used herein shall have the respective meanings
assigned to them in the above-captioned Custodial Agreement.

WELLS FARGO BANK NATIONAL
ASSOCIATION

By:_____
Name: Mark Hammer
Title: Assistant Vice President

Series: 2006-QS18

## Schedule A - Notes Not On Hand   As of  December 28, 2006

| Collateral ID | Name | Loan Amount | Doc Type | Code | Description | Notation |
|---|---|---|---|---|---|---|
| | This is a NIL report. | | | | | |
| 0 | | $         .00 | | | | |

©2006 Wells Fargo Bank, N.A.

Wells Fargo Confidential

Report name: RFC Pool Closing Released Loans

Printed 12/28/2006   9:08:00AM

**Series: 2006-QS18**

## Schedule A - Released Loans   As of December 28, 2006

| Collateral ID | Name | | Loan Amount | Effective Date/Time | Release Reason |
|---|---|---|---|---|---|
| **Pool ID:** | **40457** | | | | |
| 10742756 | Warthan | $ | 200,000.00 | 12/22/2006 08:52:27AM | 1-PAID IN FULL |
| 10745638 | Munn | $ | 770,000.00 | 12/26/2006 09:14:04AM | 1-PAID IN FULL |
| 10784278 | Diaz | $ | 213,950.00 | 12/27/2006 09:12:16AM | 1-PAID IN FULL |
| 10951283 | Adanin | $ | 119,000.00 | 12/27/2006 09:04:55AM | 1-PAID IN FULL |
| 10991719 | Tomascak | $ | 495,000.00 | 12/26/2006 08:32:00AM | 1-PAID IN FULL |
| 11009573 | Conrad | $ | 147,700.00 | 12/27/2006 09:06:15AM | 1-PAID IN FULL |
| 11064671 | Linsky | $ | 500,000.00 | 12/27/2006 09:07:11AM | 1-PAID IN FULL |
| 11072247 | Martinez | $ | 504,000.00 | 12/26/2006 08:37:26AM | 1-PAID IN FULL |
| 11135831 | Bullock | $ | 235,120.00 | 12/27/2006 09:08:37AM | 1-PAID IN FULL |
| 9 | | | 3,184,770.00 | | |
| **Pool ID:** | **40458** | | | | |
| 10988805 | Fisher | $ | 118,000.00 | 12/05/2006 03:57:35PM | PS-PENDING SALE |
| 11059663 | Gamble | $ | 324,400.00 | 12/22/2006 09:06:36AM | 1-PAID IN FULL |
| 2 | | | 442,400.00 | | |
| **Pool ID:** | **40459** | | | | |
| | Released Loans are NIL for this Pool. | | | | |
| 0 | | $ | .00 | | |
| | | $ | 3,627,170.00 | | |