ECF CASE – CHAMBERS COPY<br>
HEARING DATE: 9/28/2011<br>
TIME: 1:30 p.m.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
====================================x

IN RE:  GEORGE S. BEVINS            Case No.: 10-12856
                                    Chapter 13
                Debtor

Address:  100 Starks Knob Road
          Schuylerville, NY 12871

Last Four Digits of Debtor's SSN: xxx-xx-3595
====================================x

## SECURED CREDITOR'S OPPOSITION
## TO DEBTOR'S MOTION TO COMPEL

Deutsche Bank Trust Company Americas as Trustee for the Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS18 Trust ("DBTC") and its servicer GMAC Mortgage LLC, ("GMACM") (together, "Secured Creditor"), by their attorneys, Hinshaw & Culbertson LLP, respectfully submit this memorandum of law in opposition to George S. Bevins' ("Debtor") Motion to Compel, dated September 3, 2011 (Docket No. 66).

## PRELIMINARY STATEMENT

Secured Creditor filed a Proof of Claim on August 26, 2010 ("POC") on behalf of DBTC. In response, Debtor filed an Objection to Proof of Claim # 4 ("Debtor's Objection")(Docket No. 22) seeking to expunge the Secured Creditor's POC. The crux of Debtor's Objection is that Secured Creditor lacks standing to prosecute its claim. The POC was filed with supporting documents, including a copy of the original note executed by debtor. However, the copy of the note submitted with the POC was a copy that had been imaged prior to the assignment and subsequent endorsement of the note to the Secured Creditor. Debtor has since been provided

130168147v1 0919091 55921

with copies reflecting the present day image of the original mortgage and note with all endorsements, and copies of the certificates from the custodian of mortgage evidencing when the mortgage and note were received by the trust, i.e., prior to the filing of the POC. Debtor also had one of his "experts" examine and photograph the original mortgage and note with endorsements.[1]

Discovery is designed to flesh out evidence relevant to the parties' allegations or, at the very least, the subject matter of the case. It is not a license to use the present case as a fishing expedition for future cases or to investigate without limitations. Secured Creditor has produced all documents that are relevant to Debtor's claim that Secured Creditor lacks standing. Debtor contends that his vague and overbroad demands have not been fully answered. However, inasmuch as Secured Creditor could discern the demands, Secured Creditor provided responses. Accordingly, the Court should deny Debtor's motion to compel.

## STATEMENT OF RELEVANT FACTS

Debtor has taken a scorched-earth strategy in this litigation. On or about March 4, 2011 Debtor propounded:

- 133 Requests for Admissions on GMACM (*See* Motion to Compel, Exh. 3);
- 36 Interrogatories on GMACM (*See* Motion to Compel, Exh. 4);
- 56 Document Requests on GMACM (*See* Motion to Compel, Exh. 5);
- 133 Requests for Admissions on DBTC (*See* Motion to Compel, Exh. 6);
- 36 Interrogatories on DBTC (*See* Motion to Compel, Exh. 7);
- 47 Document Requests on DBTC (*See* Motion to Compel, Exh. 8).

---

[1] The U.S. Trustee has also had an opportunity to review the original mortgage and note with endorsements which are currently being held at the undersigned's office.

Secured Creditor has responded to more than 400 discovery demands and has produced more than 1900 pages of responsive documents.  In addition to the above demands, Debtor is still seeking depositions of at least 2 individuals, whom Debtor indicated he wants deposed in their personal capacity as opposed to their appropriate corporate representative capacity.  Debtor is also seeking forensic testing of the original note with, endorsements, and mortgage.[2]

Debtor's discovery demands are overly broad, vaguely drafted, replete with undefined terms and burdensome.  Debtor appears to have moved well beyond his lack of standing argument and is seeking documents and information relating to securitization generally, regardless of whether it has anything to do with Debtor's alleged lack of standing to file the POC in this case.

---

[2] Secured Creditor consented to the demand for forensic testing of the mortgage and note and conveyed its consent to the Court and Debtor during the last telephonic status conference.  Secured Creditor called counsel to debtor a month ago to request information necessary to draft a stipulation concerning the delivery of the documents for testing.  Although debtor's counsel indicated he would provide the information, nothing further has been communicated to Secured Creditor.

# ARGUMENT[3]

## BECAUSE SECURED CREDITOR HAS RESPONDED TO DEBTOR'S DISCOVERY DEMANDS DEBTOR'S MOTION TO COMPEL SHOULD BE DENIED

The right to discovery is not without limitation. A party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. Rule 26(b). Further, the party seeking to compel discovery "bears the initial burden of demonstrating the relevance of the requested materials to a claim or defense in the case." *See Zanowic v. Reno*, 2000 WL 1376251 (S.D.N.Y. 2000). While relevancy is a liberal standard, it is not so loose that the parties should be "permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *In re Surety Ass'n of America*, 388 F.2d 412, 414 (2d Cir. 1967), *see also Amcast Industrial Corp. v. Detrex Corp.*, 138 F.R.D. 115 (N.D.IN 1991), *In re Fontaine*, 402 F.Supp. 1219, 1222 (E.D.N.Y. 1975), *Spina v. Our Lady of Mercy Med. Ctr.*, 2001 WL 630481, (S.D.N.Y. 2001). It is well-settled in the Second Circuit that a party cannot "use the [discovery] process to find evidence in support of a mere 'hunch' or 'suspicion' of a cause of action." *Waldron v. Cities Service Co.*, 361 F.2d 671, 673 (2d. Cir. 1966) *aff'd* 391 U.S. 253, 88 S.Ct. 1575. Moreover, the

---

[3] In its prior filings in connection with Debtor's Objection, Secured Creditor has argued that it has already satisfied its burden of establishing its rights under the note and mortgage in that it is currently in possession of the original note and mortgage. Under New York law, a promissory note is a negotiable instrument within the meaning of Article 3 of the Uniform Commercial Code ("UCC"). *See MERS v. Coakley*, 41 A.D.3d 674, 838 N.Y.S.2d 622, 622 (2d Dept. 2007); UCC 3-104. The documentary evidence establishes that the Secured Creditor is the "holder" and owner of the Note within the purview of Article 3 of the Uniform Commercial Code. Additionally, it is well-established that in New York an assignment can be effected solely by transfer of the relevant note and mortgage by the assignor to the assignee with the intention that all ownership interests are thereby transferred. *See Deutsche Bank Nat'l Trust Co. v. McRae*, 27 Misc.3d 247, 894 N.Y.S.2d 720 (Sup.Ct. Alleghany Cty. 2010)*; In re Minbatiwalla,* 424 B.R. 104, 109 (citing N.Y. Real Property Law §244: "a grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery"). As previously demonstrated, DBTC is in possession of the original Note, endorsed to the Secured Creditor, and recorded Mortgage executed by the Debtor. Therefore, DBTC is an assignee with standing to enforce its rights with respect to the Bevins Loan pursuant to the PSA. See *In re Escobar*, ---B.R.---, 2011 WL 3667550 (E.D.N.Y. 2011)(movants through uncontroverted affidavit testimony demonstrated standing as they are holders of the Notes by virtue of possession of original notes executed with endorsements in blank). The breadth of Debtor's discovery demands are even more bewildering when coupled with New York State law and the evidence provided to Debtor thus far.

Federal Rules empower the trial court to limit discovery if it determines that the "burden of expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy,[4] the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving these issues." Fed.R.Civ.P., Rule 26(b)(2)(C)(iii).

Finally, in considering a motion to compel, the Courts conduct a balancing test, "weighing the need for discovery by the requesting party" – here, above and beyond 1900 pages already produced – and "the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 518 (M.D.N.C. 1989) When the information sought has minimal relevance – or no relevance as is the case here – but would impose a significant burden on the responding party discovery is properly limited. *In re International Bus. Mach. Corporate Sec. Litig.*, 163 F.3d 102, 111 (2d Cir. 1998). Noticeably absent from Debtor's moving papers is any credible claim, rationale or showing that the information he is seeking is germane to his standing claim.

### A.    The Privilege Log is Sufficiently Detailed

Debtor claims that Secured Creditor's responses to his more than 400 discovery demands are deficient because (a) Secured Creditor's privilege log is somehow vague and, (b) Secured Creditor asserted "blanket objections" which should be withdrawn for all responses. Debtor's claims are meritless and should be rejected by the Court.

---

[4] Notably, the amount in controversy in the instant action is at least the $122,420.13 claimed on Secured Creditor's POC. In addition to the costs associated with discovery thus far, if Debtor is "permitted to roam in shadow zones of relevancy" the further costs of discovery, including depositions and additional motion practice, for both parties is likely to exceed the amount in controversy.

5

First, with respect to the privilege log, Secured Creditor sufficiently complied with the law. A privilege log must provide "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *United States v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996). Where a document is withheld in the course of discovery because it is privileged, the Federal Rules provide that the party must provide the following in a log: "(i) the type of document, e.g. letter or memorandum; (ii) the general subject matter of the document; (iii) the dates of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including where appropriate, the author of the document, the addressees of the document and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other[.]" Fed.R.Civ.P. Rule 26(b)(5)(A).

In the instant case, Secured Creditor's privilege log consists of just four documents it identified as potentially responsive but privileged, clearly satisfies the criteria above. Each entry in the privilege log states the subject matter of the documents, the sender and recipient of each document and, the dates (and/or date range) each document was either generated or sent. Additionally, the descriptions contained in the privilege log sufficiently explains what the documents are so as to provide Debtor with "enough information to support the privilege claim." *U.S. v. Constr. Prod. Research Inc.*, 73 F.3d 464 (2d Cir. 1996). Moreover, the privilege log clearly reflects that the communication was by and between GMACM and Steven Baum, P.C. *See* Exh. 9.

With respect to Debtor's assertion that the privilege log was provided "more than four months after the claimants filed discovery responses," Debtor fails to inform the Court that in the period after Secured Creditor served its discovery responses, the parties were engaged in various

6

discussions relating to Debtor's voluminous demands and efforts to resolve disputes. In fact, during one such discussions, the parties had essentially agreed to take a bifurcated approach to discovery, at the suggestion of the U.S. Trustee, to first address Debtor's standing claim before engaging in further costly and unnecessary discovery.[5]  Additionally, Debtor was informed during those discussions that the privilege log would be forth coming.

Debtor disingenuously suggests that Secured Creditor asserted "blanket assertions of privilege" as its only answer to Debtor's over 400 discovery demands. A review of Secured Creditor's responses reveals that Secured Creditor provided, where it could reasonably decipher Debtor's vague and overly broad demands, substantive responses to each request and only asserted the attorney-client and/or work product privilege *"to the extent that [the request] seeks information that is protected by the attorney client and/or work product privilege."*

---

[5] Indeed, Debtor's initial agreement to the bifurcation of discovery was conveyed to the Court during a court conference. However, Debtor subsequently backed out of the agreement.

B.   **Secured Creditor's Objections Were Justified**

A significant number of Debtor's demands are not even tangentially related to his standing claims. For instance:

- Document Request No. 14: Provide all documents referring or relating to the Swap Administration Agreement.

- Document Request No. 15: Provide all documents referring or relating to the Swap Account.

- Document Request No. 23: Provide the notary registration book for any public notary who certified the signature of any person on any documents referred to herein.

- Document Request No. 33: Provide all documents referring or relating to any attorney's opinion of title or similar guarantee of title acceptable to mortgage lenders generally in this jurisdiction and related to this mortgage.

- Document Request No. 34: Provide all Pool Insurance contracts issued to cover any grade of bonds issued by or for the bond holders.

- Interrogatory No. 3: Identify the person(s) involved in the underwriting of note and mortgage.

- Interrogatory No. 17: Explain fully each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the Originator by the Sponsor and Master Servicer for handling, processing, originating or administering this note and mortgage.

- Interrogatory No. 18: Identify any party, person or entity known or suspected by you who may posses or claim rights under the note and mortgage.

- Interrogatory No. 19: Identify the auditor and/or accountant of your financial statements or tax returns.

- Interrogatory No. 20: Identify any attorney with whom you consulted or who rendered an opinion regarding the note and mortgage.

- Interrogatory No. 21: Explain fully whether any investor/certificate holder approved or authorized foreclosure proceedings on the note and mortgage.

Debtor's interrogatories exceed the twenty-five (25) maximum allowable written interrogatories permitted under Fed.R.Civ.P. 33. Specifically, Rule 33 states that "unless

8

otherwise stipulated or ordered by the court, a party may serve on any other party no more that 25 written interrogatories, including all discrete subparts." Here, GMACM and DBTC were collectively served with more than 70 Interrogatories, as well as more than 260 Requests for Admissions and more than 100 document demands.

### C. Secured Creditor Responded Completely to Debtor's Interrogatories

Debtor's issue with the adequacy of Secured Creditor's responses to Interrogatories Nos. 3, 3, 5, 7, 8, 9, 13, 14, 15, 17, 18, 21 and 22 (see Exh. 4) and 3, 3, 5, 7, 8, 9, 13, 14, 15, 17, 18, 21, and 22 (see Exh. 7) are feigned and without merit. First, Debtor claims that Secured Creditor is under a "duty to investigate and respond" to these interrogatories. However, Rule 33 requires that a party must respond by furnishing such information as is available to the party. Fed.R.Civ.P. Rule 33(a). Here, Debtor's interrogatories seeks information not available to the Secured Creditor or readily obtainable by it.

Second, the response to each of those Interrogatories was appropriate and answered fully to the best of Secured Creditor's abilities. These interrogatories appear to seek information relating to the securitization of the note and mortgage, the identity of the loan servicers, identity of persons in custody of document that refer or relate to any instruction or authority to enforce the note or mortgage, the date on which the Originator sold the note and mortgage to the sponsor and the date on which the Sponsor and Master Servicer sold the note and mortgage to the Depositor. Secured Creditor properly directed the Debtor to the Pooling and Servicing Agreement ("PSA") as the best source of the information sought in Debtor's Requests. Federal Rule 33 (d)(1) gives the interrogated party the option of producing business records in responding to interrogatories. Specifically, Rule 33(d) states

> if the answer to an interrogatory may be determined by examining, auditing, compiling…summarizing a party's business records…and if the burden of deriving or ascertaining the answer

9

> will be substantially the same for either party, the responding party may answer by (1) specifying the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

Debtor disingenuously claims that Secured Creditor responded by essentially saying "look for it yourself in the documents that we have provided." However, Debtor is wrong. In analyzing Rule 33(c)[6] and a responding party's option to respond to interrogatories through business records, the Court in *Daiflon, Inc. v Allied Chem. Corp.*, 534 F2d 221, 225-26 (10th Cir 1976) noted that

> Rule 33(c) gives the party served the option of producing records from which the answer can be obtained instead of preparing a direct answer when ". . . the burden of deriving or ascertaining the answer is substantially the same for the party **\*226** serving the interrogatory as for the party served . . .." The party served must specify the records and cannot merely indicate that the information sought may or may not be found in the records made available. *In re Master Key Antitrust Litigation, 53 F.R.D. 87 (D.Conn.1971).* The notes of the Advisory Committee on Rules indicate that subdivision c relates ". . . especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer." Moreover, if an answer is readily available in a more convenient form, Rule 33(c) should not be used to avoid giving the ready information to a serving party. *See Atlanta Fixture & Sales Co. v. Bituminous Fire & Marine Ins. Co., 51 F.R.D. 311 (N.D.Ga.1970).*

Contrary to Debtor's contention, Secured Creditor did not direct Debtor to "essentially look through more than 700 pages of documents." Like the appellants in *Daiflon*, Secured Creditor provided bates-stamped documents and in its responses, directed Debtor to specific documents identified by the bates numbering. Indeed, in relevant responses, Secured Creditor culled through the documents provided and directed Debtor to exact pages where the information sought can be readily located. For example, Secured Creditor's response to Interrogatory No. 9

---

[6] Federal Rule 33(c) is now codified at Federal Rule 33(d).

which sought the "identity of any and all persons who have or had personal knowledge of the note and mortgage transaction, underwriting of the note and mortgage transaction, securitization, sale, transfer, assignment or hypothecation of the note and mortgage, or the decision to enforce the note or mortgage;" states

> Subject to and without waiving said objections, Secured Creditor refers Debtor to the documents bate stamped "DBGMAC 000001 -- DBGMAC 000751;" "DBGMAC 000754;" "DBGMAC 000759 – DBGMAC 000806;" "DBGMAC 000808 – DBGMAC 000811;" "DBGMAC 000812 – DBGMAC 000819;" "DBGMAC 000824 – DBGMAC 000827;" "DBGMAC 000868 – DBGMAC 945;" "DBGMAC 000949 – DBGMAC 000963;" "DBGMAC 000970 – DBGMAC 000971;" "DBGMAC 000984 – DBGMAC 998;" "DBGMAC 1135 – "DBGMAC 1142;" "DBGMAC 001328 – DBGMAC 001329"  "DBGMAC 001353 – DBGMAC 001462" "DBGMAC 001641 – DBGMAC 001713" and "DBGMAC 001721 – DBGMAC 001748."

Here, despite Interrogatory No. 9 being overly broad, vague and irrelevant, Secured asserted its specific objections and provided a detailed response.  Moreover, this interrogatory is a prime example of Debtor moving well beyond his lack of standing claims; this interrogatory appears to be seeking information regarding Debtor's initial loan transaction which occurred in 2006, e.g. "underwriting of the note and mortgage transaction."  Debtor's discovery demands seeking information or individuals with personal knowledge of the underwriting of the note and mortgage or who was present at the closing or who notarized Debtor's signature at the closing is irrelevant and burdensome, particularly where Debtor acknowledges his indebtedness under the note and mortgage and even listed this mortgage debt on his initial Schedule D.

Debtor's claims regarding the deficiency of referring him to the PSA is equally without merit.  The PSA contains an index of the material contained within, a glossary that provides definitions of the critical terms such as "Closing Date" and "Cut-Off Date."   The first few pages of the PSA readily and easily identifies the parties to the PSA, the name of the Trustee, the

11

Custodian, the Depositor, and the date on which the PSA is effective. Debtor's claimed burden of "deriving or ascertaining the answer" from reviewing the documents he requested is "substantially the same" as Secured Creditor's. Debtor also claims that he cannot determine the date on which the mortgage and note were sold by the Depositor to the Trust. However, Debtor has apparently forgotten or is ignoring the additional documentation that Secured Creditor filed in response to the Debtor's Objections. In its filings, Secured Creditor provided the Court and Debtor with copies of the Custodian receipts confirming that the Trust was in physical possession of Debtor's original note and mortgage as of December 28, 2006, some 4 years prior to the filing of the POC. Secured Creditor also provided copies of the schedule of mortgages that were included in the PSA and was able to identify Debtor's loan among the other loans listed in the schedule of mortgages.

Debtor takes issue with GMACM's and DBTC's response to Interrogatory 3. Interrogatory No. 3 sought the identity of "all persons known to you who have personal knowledge of any facts or issues referring, relating or concerning the debtor and/or the note and/or the mortgage." GMACM rightfully objected to that Interrogatory on vagueness grounds as the Interrogatory is neither limited in scope nor time and seemingly seeks information from the beginning of time as it relates to the mortgage, note and debtor. Interrogatory No. 3 propounded on DBTC sought the identity of the "person(s) involved in the underwriting of note and mortgage." Again, DBTC's objections were appropriate as the Interrogatory is clearly seeking information that is not relevant to the issues raised by Debtor. Debtor acknowledges that he took a mortgage and gave a security interest in the property. Indeed, Debtor listed GMACM as a secured creditor on his initial Schedule D.[7] Moreover, Secured Creditor provided Debtor

---

[7] However, subsequent to Secured Creditor's filing of its POC, Debtor amended his Schedule D to list his mortgage

12

with a copy of the closing file related to the mortgage origination. Furthermore, Secured Creditor was not involved in the initial mortgage origination.

Secured Creditor's response to Interrogatories Nos. 10, 11, 12, 22 were likewise sufficient. Secured Creditor provided a complete description of Judy Faber's employment history.[8] However, information relating to the employment history of Nancy Figy and Epliniki Bechakas is not within Secured Creditor's possession. In *Bellinger v. Astrue*, 2010 WL 1268063 (E.D.N.Y. 2010), an employee in a Title VII gender discrimination case sought detailed information about the job status and career histories of various categories of employees. The Court found that the employer's burden of complying with the interrogatories "would be substantial and the likely benefit of the discovery…is slight or non-existent, particularly in light of the narrow scope of plaintiff's claims and the broad range of discovery that has already been produced." *Id.* at 1. For example, Interrogatory 22 seeks the identity of:

> all current and past employees of the following entities from October 2006 to the present who had knowledge, responsibility, or otherwise made or received reports referring or relating to the note and mortgage:
>
> a. GMAC
> b. Homecoming
> c. RFC
> d. RALI, Inc.
> e. Trust
> f. Trustee
> g. WFB
> h. Steven J. Baum, P.C.
> i. Frontier Abstract and Research Services, Inc.
> j. Originator
> k. Sponsor and Master Servicer
> l. Depositor

---

debt as "disputed." *See* Amended Schedule D dated November 19, 2010.

[8] Judy Faber has recently left her employment at GMACM and, upon information and belief, is now employed by Wells Fargo Bank, N.A.

13

      m. Custodian

On its face, Interrogatory 22 and all its subparts is beyond what is permitted by the Federal Rules, it is overbroad, vague, burdensome, replete with undefined terms and seeks information pertaining to non-parties that is neither relevant nor within Secured Creditor's possession.  Contrary to Debtor's position that Secured Creditor is under a "duty to investigate and respond" to these interrogatories, the Rules of Civil Procedure do not place such an onerous burden on the interrogated party to obtain information from non-parties of whom they have no control; particularly where Secured Creditor would likely have to obtain the information itself pursuant to a subpoena. *See Segarra v. Waterman Steamship Corp.,* 41 F.R.D. 245, 247 (D.P.R. 1966)("Interrogatories should not impose upon the opposing party a duty to make inquiries and investigations…A litigant may not compel his adversary to go to work for him."); *Stanzler v Loew's Theatre & Realty Corp.,* 19 FRD 286, 289 (DRI 1955)(Rule 33 requires that the answering officer of a corporation shall furnish such information as is within the knowledge of the officers of such corporation.  Such officer may not be compelled to undertake an investigation of the internal affairs of any other corporation); *see also Webster Motor Car Co. v Packard Motor Car Co.,* 16 FRD 350, 351 (DDC 1954)(Interrogatories may not require the party being examined to make inquiries or investigations of persons not connected with its own organization, or into files belonging to other persons or organizations).

The cases relied on by Debtor are in applicable to the instant matter.  In *In re Auction House Antitrust Litigation*, 196 F.R.D. 444 (S.D.N.Y. 2000), the issue was the responding party's obligation to obtain information from a former employee. In *Cada v. Costa Line, Inc.*, 95 F.R.D. 346 (N.D. ILL 1982), the discovery at issue was requests for admissions and, the specific issue was whether defendant had provided a specific reason as to why it could not admit or deny the requests.

Finally, Interrogatories 17, 18 and 21 seek information that has no bearing on the disputed issues. Interrogatory 17 sought information relating to the "compensation, fee, commission, payment or other financial consideration paid to the Originator by the Sponsor and Master Servicer for handling, processing, originating or administering this note and mortgage." Interrogatory 21 sought an explanation of "whether an investor/certificate holder approved or authorized foreclosure proceedings on note and mortgage." In its response, Secured Creditor properly directed Debtor to review the PSA which outlines in detail how and who is authorized to commence a foreclosure action under the terms of the PSA. Secured Creditor's objections to interrogatories 17 and 21 were well founded as this information is neither germane to the issues herein nor is it reasonably calculated to lead to discovery of admissible evidence. Likewise, Interrogatory 18, asked Secured Creditor to speculate who, from the public at large, may possess or claim rights under the note and mortgage. This Interrogatory is asking Secured Creditor for a legal opinion as to who, other than Secured Creditor, has legal rights under the note and mortgage. *See Anderson v. United Airlines*, 49 F.R.D. 144 (S.D.N.Y. 1969)(objections to interrogatories sustained where requests called for legal conclusions or interpretations rather than admissions of fact). Secured Creditor's objection was reasonable and appropriate given the breadth of the interrogatory.

    **D.**    **GMACM's Responses to Document Requests**

The majority of Debtor's document requests were vague, burdensome and not narrowly tailored to lead to the discovery of admissible evidence relating to Debtor's objection to Secured Creditor's proof of claim. Indeed, Secured Creditor has produced more than 1,900 pages of documents, including copies of the wet ink, original note and mortgage held by Secured Creditor and evidence as to when the note and mortgage were delivered to the Trustee.

Debtor claims that he is entitled to "digital copies" of the information requested in 6, 8, 9, 10, 11, 12, 13, 16, 20, 25, 27, 37, 39 and 40[9] (*see* Exh. 5) and 6, 7, 8, 9, 10, 11, 12, 12, 25, and 27 (*see* Exh. 8). However, Debtor was provided with hard copies of all responsive digitized images which Secured Creditor provided to its counsel. To the extent Debtor is requesting a copy of those same images on a computer disk, and to the extent Secured Creditor has not objected to the requests, Secured Creditor will provide such a disk(s).

Further, Document Request 16 seeks "all written acknowledgements for the receipt of all documents, including digital and/or computer documents, executed by the Trustee for the Trust." Secured Creditor objected to this request as it is on its face overly broad, vague and burdensome. First, this request is neither limited in scope or time. Second, the Request is vague and replete with undefined terms and seeks documents that have no relevance to Debtor's standing claim. Finally, the Trust is comprised of hundreds of different loans all with their own particular documentation. This Request is seemingly seeking wholesale production of *all* "written acknowledgements for the receipt of all documents…executed by the Trustee for the Trust," with no regard as to whether the documents have anything to do with Debtor's note and mortgage.

Debtor claims that Secured Creditor refuses to provide documents responsive to Document Requests 19, 23 (*see* Exh. 5 and Exh. 8), 42, 43, 44, 47 (*see* Exh. 5) and 38 (*see* Exh. 8).[10] With respect to Document Request No. 23 (*see* Exhibit 5 and Exhibit 8), Secured Creditor

---

[9] Secured Creditor objected to requests 39 and 40 (see Exh, 5) on the specific grounds that the Requests were vague, overly broad and burdensome and Secured Creditor asserted its attorney-client privilege. Request 39 sought "*any* and *all* electronic documents in the LPS Desktop workstation referring or relating to the mortgage and note" and Request 40 sought "*any* and *all* electronic mail messages referring or relating to the mortgage and note." These Requests are unlimited in time and are so vague and broad, they conceivably would include communications between Secured Creditor and its counsel.

[10] Document Request 19 requested an executed copy of the PSA. Secured Creditor provided a copy of the Pooling and Servicing Agreement that was on file with the Securities and Exchange Commission and provided Debtor with an electronic link to access the PSA, which is also publicly available. However, Secured Creditor will produce an executed copy of the PSA.

definitively responded that it is not in possession of responsive documents. *See* Exh. 5 and Exh. 8. Document Requests 42, 43, 44, 47 and 38 are vague and requests documents that are either not within Secured Creditor's possession or not even remotely relevant to Debtor's claims. Debtor is seeking documents relating to MERS and/or communications with MERS employees. MERS is not a party to this action and has not appeared in this action. The information sought by Debtor has no relevance to his standing claims as Secured Creditor has demonstrated that it has been in possession of the original note and mortgage since on or before December 28, 2006 – four years prior to the filing of the POC. Debtor has been provided with more than 1900 pages of documents relating to his note and mortgage, including a copy of the original note and mortgage. Additionally, Debtor has been informed (and has been welcomed) to come and personally inspect the original note and mortgage for more than 9 months, and has not done so.[11]

Finally, Request 47 seeks documents "relating to all written rules, regulations or procedures referring or relating to the assignments of a deed or mortgage to the Trust." Even if this vague category of documents was something other than those already produced, Debtor cannot articulate any proper basis to demand production of these documents. It is well-established that a plaintiff does not have standing to challenge, or enforce, the terms of an agreement to which that plaintiff is not a party. *See, e.g., Rogan v. Bank One*, 457 F.3d 561, 567 (6th Cir. 2006) (where the Sixth Circuit found that both the bankruptcy debtor and the trustee in bankruptcy lacked standing to challenge an original creditor's assignment of its interest to another bank because they were not parties to the assignment). Debtor is not a party to the Trust or its creation and is not a third-party beneficiary of the Trust and has no standing to challenge

---

[11] As stated previously, one of the Debtor's "experts" inspected and photographed the note and mortgage at the undersigned's office on or about May 4, 2011. To date, Secured Creditor has not received any expert disclosure or report in connection with this "expert's" inspection of the original note and mortgage.

the Trust, the creation thereof or challenge the mortgage's chain of title to the Trust. *See In re Correia*, 452 B.R. 319 (B.A.P. 1st Cir. 2011) (because debtors cannot show they were a party to the [PSA] or intended third-party beneficiaries, they lacked standing to the mortgage's chain of title under the PSA); see also *Schieroni v. Deutsche Bank Nat. Trust Co.*, 2011 WL 3652194 (S.D. TX 2011)(mortgage debtors lack standing to challenge the chain of title under the contracts by which the assignments are allegedly made).

## CONCLUSION

Based on the foregoing and on its prior filings, Secured Creditor respectfully submits that Debtor's motion to compel and seeking fees and costs be denied in its entirety.

DATED:    New York, New York
          September 21, 2011

HINSHAW & CULBERTSON LLP

*/s/ Khardeen I. Shillingford*
Schuyler B. Kraus (515364)
Khardeen I. Shillingford (516622)

780 Third Avenue, 4th Floor
New York, New York 10017
(212) 471-6200
*Attorneys for Secured Creditor*